## 49915. THOMAS v. THE STATE.

WEBB, Judge.

Donald Thomas, known as Don Juan Thomas, Fat Don and Fats, was indicted, tried, convicted and sentenced on three counts charging violation of the Uniform Narcotic Drug Act[1] by the unlawful sales of heroin on October 12, October 24, and October 29, 1973 in Macon to Agent Charles L. Haywood, of the Georgia Division of Investigation. On the trial Thomas admitted the sale on October 12, but denied the other sales. He contended that he was sitting down with some others at a beer house on Pio Nono, across the street from Handy Andy and close to Package House, just talking, and was

[1]Ga. L. 1967, pp. 296, 325; Code Ann. Ch. 79A-8.

approached by "A big dude, his name was Freddie. He was with the agent. He asked did anybody know where he could get some drugs from and so everybody around said, 'yeah' and I told him 'yeah' too, and I told him if he give me the money I would go and get it for him. The reason I did that he said he was sick and so you know when he gave me the money and I went and got it for him"; that he was given $90, with which he purchased drugs from another person and brought it back and gave it to him.

Agent Haywood testified that on October 12 at the time of the first purchase he was accompanied by Jimmy Moore, who had previously so.'d him drugs. "Jimmy Moore agreed to take me to purchase some heroin. We departed this residence and went to the corner of Pio Nono Street and Anthony Street, at the location of Church's Fried Chicken. The car was parked at this location. We got out of the car and I followed Jimmy Moore to the High Hat Club, which is located adjacent to the Church's Fried Chicken. Here Jimmy Moore met a subject, whom I heard him call Fats. I heard him whisper in Fats' ear. Prior to Jimmy Moore talking — while we were walking towards the High Hat Club where Fats was, I gave Jimmy Moore $90 for the purpose of purchasing suspected heroin. He approached the subject, whom I heard him call Fats, and I heard him whisper and I saw him whisper something, and this was followed by Fats taking some glassine bags out of his pocket and counting them off and handing them to Jimmy Moore and then Jimmy Moore gave him the money which he had in his hands. From there we went back to the car and went back to the residence of Jimmy Moore." Agent Haywood testified Moore took three of the bags for himself and gave six to him. (Other testimony revealed that at the time of this trial Moore himself was in jail on a narcotics charge.)

Haywood further testified that another person, unidentified, accompanied him and Moore to the area near the High Hat Club (Thomas' beer club) but he remained in the car on the back seat while the car was parked at Church's Fried Chicken, not far from the beer club. This unidentified person was a confidential informer, known to the agent as Curtis, who rode from Atlanta down to Macon with the agent to advise him in

the vernacular of those generally using and trafficking in illegal drugs, as well as the approximate going prices. He did not participate in any transaction with Fats Thomas and did not know the accused. Counsel for Donald Thomas asked that Agent Haywood divulge his name, and to describe him, it being the testimony later given by Don Juan Thomas, the accused, that it was to that man that he sold the heroin. The trial court sustained the state's objection to disclosure of the informer's name and a description of him. Thomas named the individual to whom he transferred the heroin as "Freddie," testifying "the agent gave his name ₹ ₃ Curtis but it was his last name. That was the person that was with him all the time."

Thomas testified that he got out of service in March, 1970; that he was then on heroin and remained so until July, 1971; that he was on acid when he committed a burglary in July, 1971 to which he entered a guilty plea; that he had smoked reefers, taken acid, used pills and drank romatussin; that he got out of prison in November, 1972 on parole; he went back on heroin Thanksgiving Day, 1972, got into trouble in December of 1972, being charged with Affray and Carrying a Pistol Without a License, to which he pleaded guilty and for which he served six months of a twelve-months' sentence; and that since Labor Day, 1973 he had been off heroin and enrolled in the methadone program. Thomas testified that he is a "Nickel Willie" and defined for the jury a "Nickel Willie" to be "Somebody that is, ah, like a person, a person or something what he ain't. Something else, like, for instance a person wants some drugs or something like that, you get the drugs for this person and everybody would be thinking that is what you are doing, pushing drugs, like that, it is something what you are not."

1. The first of two alleged errors enumerated by Don Juan Thomas is that the trial court sustained the state's objection to the admission of testimony as to the physical description of the anonymous informer, Thomas contending that such information would have helped him "establish the informer's identity and such identity was necessary and relevant" to his defense of entrapment as to the first sale on October 12, 1973.

Ordinarily, one who acts in the capacity of a peace officer or connected therewith will not be required by the courts to bewray the name or identity of his informant concerning the crime for which the accused is being tried. This rule rests upon sound public policy. *Anderson v. State,* 72 Ga. App. 487, 493 (4) (34 SE2d 110); *Pass v. State,* 227 Ga. 730, 732 (182 SE2d 779); *Welch v. State,* 130 Ga. App. 18 (202 SE2d 223); Code § 38-1102; 58 AmJur 300, Witnesses, § 534. To describe the alleged informer so as to help the accused to "establish the informer's identity" is tantamount to naming him, and comes within the rule enunciated.

There is no contention that the alleged informer was a decoy, as to which there is a vast difference between an informer. *Crosby v. State,* 90 Ga. App. 63 (82 SE2d 38). Actually, by his own testimony Fats Thomas seems to have known the person he contends was an informer and to whom he says he made the first sale, he having testified that he was known to him as "Freddie" and Curtis was his last name. In the case sub judice, the agent testified that the informer did not get out of the car that was parked at another location from that where the sale was made, did not know the accused, and did not participate in any transaction with Fats Thomas. The informer here was not used as a lure, did not induce Thomas to enter into any transaction, and there is no "decoy" situation here requiring disclosure of his identity and his production for cross examination. *Butler v. State,* 127 Ga. App. 539, 541 (194 SE2d 261). As the trial judge remarked, "I don't recall any testimony connecting the informer with any of these arrests," and even if he had been a witness to the transaction, his testimony was not essential to Thomas' conviction. *Estevez v. State,* 130 Ga. App. 215, 216 (2) (202 SE2d 686). No error was committed by refusing to require the state to identify or describe the informer.

2. The second alleged error enumerated by the accused is that the trial court committed harmful, prejudicial and reversible error by failing and refusing to charge the jury on the principle of entrapment, that Donald Thomas could have been entrapped by an agent of the state.

Under Criminal Code § 26-905, the accused must be

induced to commit the act, which he otherwise would not have committed, "by undue persuasion, incitement, or deceitful means." "An officer may not induce persons who would not otherwise commit a crime to violate the law and then prosecute them for it. An officer should not lead a man into crime, thereby making him a criminal merely to punish him. 'Entrapment is the seduction or improper inducement to commit a crime and not the testing by trap, trickiness, or deceit of one suspected.' [Cit.] The discovery of crime and the procurement of evidence by deception are not prohibited. A trap may be set. [Cits.]" *Sutton v. State,* 59 Ga. App. 198, 199 (200 SE 225).

The agent's testimony was that Jimmy Moore "approached the subject, whom I heard him call Fats, and I heard him whisper and I saw him whisper something, and this was followed by Fats taking some glassine bags out of his pocket and counting them off and handing them to Jimmy Moore and then Jimmy Moore then gave him the money which he had in his hands." This was no entrapment. Fats Thomas testified that "a big dude, his name was Freddie" was with the agent, that Freddie "asked did anybody know where he could get some drugs from . . . and I told him 'yeah' . . . The reason I did that he said he was sick and so you know when he gave me the money and I went and got it for him."

"The testimony merely that a witness purchased whisky with money furnished by an officer, and that the witness told the defendant that he 'had just gotten over a drunk and was feeling mighty bad and had begged him [the defendant] to sell me [witness] whisky' is not sufficient to raise the defense of entrapment . . . He committed a criminal act, and the evidence does not show that he did not exercise his own volition by so doing . . . Even if the statement of the witness to the defendant that he 'had just gotten over a drunk and was feeling mighty bad' be considered as a temptation to sell the liquor, this would be but a repetition of the first plea ever interposed in Paradise: 'The serpent beguiled me and I did eat.' That defense was overruled by the great Lawgiver, and whatever estimate we may form, or whatever judgment pass upon the character or conduct of the tempter, this plea has never since availed to shield crime or give

indemnity to the culprit, and it is safe to say that under any code of civilized, not to say Christian, ethics, it never will." *Sutton v. State,* 59 Ga. App. 198, 199, supra.

The record here simply fails to raise an issuable defense of entrapment, and the trial court did not err in failing to charge on this subject. Criminal Code § 26-905; *Hill v. State,* 225 Ga. 117 (166 SE2d 338); *Sutton v. State,* 59 Ga. App. 198, supra; *McKibben v. State,* 115 Ga. App. 598, 599 (1) (155 SE2d 449) and cases cited; *Allen v. State,* 120 Ga. App. 533, 535 (4) (171 SE2d 380); *Brooks v. State,* 125 Ga. App. 867 (2) (189 SE2d 448); *Brown v. State,* 132 Ga. App. 399 (1) (208 SE2d 183); *Garrett v. State,* 133 Ga. App. 564 (3) (211 SE2d 584).

*Judgment affirmed. Bell, C. J., Pannell, P. J., Deen, P. J., Quillian, Clark, Stolz and Marshall, JJ., concur. Evans, J., dissents in part.*

ARGUED NOVEMBER 6, 1974 — DECIDED JANUARY 30, 1975 — REHEARING DENIED FEBRUARY 19, 1975 —

*Adams, O'Neal, Hemingway, Kaplan, Stone & Brown, John D. Carey,* for appellant.

*Fred M. Hasty, District Attorney, Walker P. Johnson, Jr., Assistant District Attorney,* for appellee.

EVANS, Judge, dissenting in part.

I dissent from Division 2, wherein the majority holds the trial court was not required to charge on entrapment. It is my opinion that under the evidence, applying the correct law thereto, the trial judge was bound to charge the jury on the defense of entrapment.

The defendant testified under oath and denied all sales except the illegal sale of drugs on October 12. Defendant contended that while he did take money from the state's decoy, whom he recognized as a "junkie," his purpose was to buy drugs for the decoy; that he did so because the "junkie" said he was sick; he looked sick; he had needle marks on his arm, and defendant knew what it was like to have withdrawal pains of a "junkie." Defendant contended that because of having been deceived by the decoy, he used the money to purchase drugs from another

for the decoy.

Clearly this raises the issue of entrapment. "Entrapment as a Defense" is set forth in Code Ann. § 26-905 as follows: "A person is not guilty of a crime if by entrapment his conduct is induced or solicited by a government officer or employee, or agent of either [,] for the purpose of obtaining evidence to be used in prosecuting the person for commission of the crime. *Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee, or with an agent of either, and he, by undue persuasion, incitement, or deceitful means, induced the accused to commit the act which the accused would not have committed except for the conduct of such officer."* (Emphasis supplied.)

The language of our Code closely parallels that used by the U. S. Supreme Court in Sorrells v. United States, 287 U. S. 435 (53 SC 210, 77 LE 413, 86 ALR 249) where the defense of entrapment was recognized. In Sherman v. United States, 356 U. S. 369 (78 SC 819, 2 LE2d 848) it is stated that entrapment occurs when the criminal conduct is the product of the creative activity of law enforcement officials. See also *Jones v. State,* 101 Ga. App. 851, 852 (4 c) (115 SE2d 576) where our court held that entrapment is a total defense.

It is the duty of the trial judge to charge the jury on every material issue in the case (*Pass v. State,* 95 Ga. App. 510 (2) (98 SE2d 135)).The trial court erred in refusing to charge on the subject of entrapment, even without a request, because the evidence here demanded it. This issue was raised, not by an unsworn statement of defendant, but by his testimony under oath. When the issue of entrapment is raised the defendant is entitled to have the jury pass on the credibility of the entrapment defense under proper instruction from the court.

The majority opinion declines to recognize the entrapment defense, and contends it was the mere setting of a trap into which the defendant fell. Of course! That is exactly what entrapment is. The majority opinion, on pages 22 and 23, cites and relies on *Sutton v. State,* 59 Ga. App. 198, 199 (200 SE 225), to show that the state is entitled to set a trap for the defendant, and also that the

defense of entrapment, as pleaded in the Garden of Eden (that "The serpent beguiled me and I did eat"), was not then allowed by Christian ethics, nor now by any code of civilized ethics, to give indemnity to the culprit.

But this argument by the majority mistakes and confuses the premise upon which entrapment may be pleaded. Entrapment is allowed as a defense against the prosecutor (or the state or the government), only when the *prosecutor (or the state or the government)* is alleged to have entrapped the defendant. Entrapment is not available as a defense if some third person, who is not acting as an agent of the *prosecutor, state or government,* entraps the defendant. Code Ann. § 26-905 provides that when the idea of the crime originates with an officer or agent of the state, who by undue persuasion, incitement, or deceitful means, induces defendant to do something he otherwise would not have done, then the defense of entrapment is available as a complete defense.

In Holy Writ, the Lord God occupies the position of the prosecutor, or the state, or the government. God did not send His agent into the Garden of Eden to entrap Adam and Eve. To the contrary, the *serpent* was working the other side of the street, acting on his own volition, and as an agent of the Devil. Therefore, the woman could not say to God that *your agent* deceived me, but her plea was that, "The serpent beguiled me and I did eat."

The serpent was not the agent of the Lord God, he was the agent of the Devil — he was on the other side from the government, and indeed the serpent himself came under heavy criticism and condemnation for his wrongful conduct, as follows: "And the Lord God said unto the serpent, 'Because thou has done this, thou art cursed above all cattle and above every beast of the field; upon thy belly shalt thou go, and dust shalt thou eat all the days of thy life. And I will put enmity between thee and the woman, and between thy seed and her seed; it shall bruise thy head and thou shalt bruise his heel.'" Genesis 3:14-15. In the present case, if defendant had been entrapped by someone completely disconnected with the state — a serpent, for instance, — he would not be allowed to raise the defense of entrapment. He would be in a position similar to that of Adam and Eve — entrapped by the forces

of evil, but not by the Lord God, nor by an agent of the state.

Further, in the *Sutton* case, the defendant in his statement, specifically contended he did not participate in the offense charged, and it was held that because of such contention the trial judge had no duty to charge on entrapment. If defendant did not commit the act, of course, he could not have been entrapped. Further, the facts are in no wise similar to the facts in the case sub judice. In *Sutton,* supra, the decoy claimed he was getting over a drunk, felt bad, and needed whiskey. A whiskey hang-over can not be equated with the withdrawal pains which afflict a drug addict when he can not obtain the drugs at the time they are needed. Here, defendant saw the needle marks on the decoy's arms, and had familiarity with the use of drugs, and therefore, knew of the intense mental and physical agony that such drug addict suffers when he can not get the drugs. In *Sutton,* supra, it was held: "A suspected person may be tested by being offered an opportunity to transgress in such a manner as is usual therein *but may not be put under extraordinary temptations or inducements."* (Emphasis supplied.) It is quite plain that the sworn testimony of defendant in this case created an issue for the jury to pass upon as to the defense of entrapment. The sworn testimony was sufficient to enable the jury to find that: (1) The idea of commission of the crime originated with a government agent. (2) The agent used undue persuasion, or incitement, or deceitful means, to induce defendant to purchase the drugs. (3) Defendant would not have purchased the drugs but for the conduct of the decoy-agent. This fully complies with Code Ann. § 26-905.

The majority cites, but does not discuss, a number of authorities on pages 22 and 23. Briefly, we shall discuss them and show that each is easily distinguished and differentiated from the case sub judice. One factor that is in most of them is that defendants in the cited cases did not admit participation in the alleged criminal acts. We repeat, if a defendant did not commit the act, he can not claim he was entrapped into doing something that he says he did not do.

In the cited case of *Hill v. State,* 225 Ga. 117 (166

SE2d 338) procurement for prostitution is involved, and the evidence clearly shows that only the opportunity to commit a crime was offered by the state, without any undue persuasion, incitement or extraordinary temptations or inducements.

In *McKibben v. State,* 115 Ga. App. 598, 599 (155 SE2d 449), the defendant did not admit participation in the alleged wrongful acts, nor did he defend on the theory of entrapment, but merely contended entrapment was shown. It also differs widely on its facts from the case sub judice. In *Allen v. State,* 120 Ga. App. 533 (4) (171 SE2d 380), it is not shown that defendant admitted a prima facie case and a defense solely on entrapment, nor do the facts show entrapment. In *Brooks v. State,* 125 Ga. App. 867 (189 SE2d 448), from which opinion this writer dissented, the defense offered by the defendant was that he had no interest in the sale whatsoever, was not "concerned" in the purchase and sale, and contended he was an agent of the state in making the purchase; and that the court should have given the written request to charge on procuring agent as taken from the Federal decisions therein cited. Again, entrapment was not shown. In *Garrett v. State,* 133 Ga. App. 564 (211 SE2d 584), the court stated that ". . . it must mean something more than *repeated requests for contraband drugs, . . .*" (emphasis supplied) which does not measure up to the law as set forth in Code Ann. § 26-905. In *Brown v. State,* 132 Ga. App. 399 (208 SE2d 183), the decoy policewoman did nothing but stand on the street, and when approached, told the defendant to move on and repulsed his advances before the crime occurred. The defendant testified that the policewoman decoy "smiled" at him, but refused to admit that he did anything to her, and contended that he ran on the approach of the other officers, thinking he was going to be robbed. By no stretch of the imagination could this be entrapment.

For all of the foregoing reasons, I respectfully contend the trial judge should have charged on the defense of entrapment, and I dissent from the majority opinion in this case.