## 30815. CONNALLY v. THE STATE.

UNDERCOFLER, Presiding Justice.

Defendant, John Connally, was indicted, tried and convicted for having marijuana in his possession and under his control in violation of the Georgia Controlled Substances Act (Code Ann. Ch. 79A-8), and received an

eight year sentence. He appeals raising four points of error. We affirm.

Acting on information from a detective of the Chattanooga Police Narcotics division, who had received a tip from an informer that Connally would be receiving a shipment of two tons of marijuana, the Walker County authorities drew up a search warrant for Connally's house and presented it and their information to a justice of the peace for his signature. About ten days later, the same Chattanooga detective placed a call for the informer to Connally from the detective's residence, while he listened on an extension, to inquire about the shipment. He overheard Connally tell the informer that Rick and Tom, two Mexicans making the contact, had gotten in a fight in Texas, had been cut up, and would not be making their connection. He, however, had a new contact and hoped to obtain about three to four hundred pounds shortly. A few days later, under the same eavesdrop arrangement from the detective's home, the informant agreed to buy one hundred pounds at around one hundred dollars per pound when the shipment arrived. Connally later called the informer at his residence. On the basis of this phone call, the detective and informer met with the Walker County investigator, obtained a new search warrant, and raided Connally's house. There, they arrested Connally and several others, and seized some large garbage bags of green leafy material, a closetful of bricks of the same material, and several live plants growing in pots around a swimming pool. This material was identified by a crime lab expert as Cannabis sativa L., marijuana.

1. Connally moved to suppress the evidence seized under the search warrant issued by the justice of the peace. He contended the justice was not a "neutral and detached magistrate" because he had a pecuniary interest in issuing the warrant, in that he is on a fee system and receives $5 for issuing a search warrant. Code Ann. § 24-1601. The trial court denied the motion. We affirm.

Connally relies upon Shadwick v. Tampa, 407 U. S. 345, 350 (92 SC 2119, 32 LE2d 783) (1972), and similar cases which state that an issuing magistrate must be "neutral and detached" together with Tumey v. Ohio, 273 U. S. 510, 531 (47 SC 437, 71 LE 749) (1927), which held:

"From this review we conclude, that a system by which an inferior judge is paid for his service only when he convicts the defendant has not become so embedded by custom in the general practice either at common law or in this country that it can be regarded as due process of law, unless the costs usually imposed are so small that they may be properly ignored as within the maxim de minimis non curat lex." See Bennett v. Cottingham, 290 FSupp. 759, affd., 393 U. S. 317 (1969).

Connally argues that applying the rationale of these cases it must be concluded that the justice of the peace was not neutral and detached in issuing the search warrant here because unless he issues it he is not paid. The U. S. Supreme Court has not so held and we decline to do so. We discern a difference in the principles announced in these decisions and are not prepared to construe them together as Connally suggests. Shadwick and similar cases have established only that the "neutral and detached magistrate" required to determine probable cause is one independent of the police and prosecution. No contention is made here that the justice of the peace is not independent in that regard.

On the other hand, Tumey and its progeny condemn convictions by a judicial officer who has a substantial pecuniary interest in fines and costs levied against the defendant upon his conviction. This is quite different than the inquiry and adjudication of probable cause for the issuance of a search warrant, where the defendant is not convicted and subjected to fine or imprisonment. The former is not a legal dispute. It is necessarily a unilateral proceeding and only determines probable cause, and is conducted frequently by a person without formal legal training. The dispute and adversary proceedings concerning the validity of the warrant must be raised in the trial court upon a motion to suppress. Code Ann. § 27-313. It is adjudicated there by a judge trained in the law and not on a fee basis. The state has the burden of proving the search and seizure was lawful. Code Ann. § 27-313 (b).

We note too that the justice of the peace is not dependent upon an adjudication by the trial court that the search warrant was issued lawfully, nor upon the

conviction of the defendant, to be entitled to his fee. His fee is paid by the county out of any fines and forfeitures arising in such county. Code § 27-2906. Also, we are not persuaded that a justice of the peace would violate his oath to earn a $5.00 fee and are inclined to the view that the amount involved in issuing or refusing to issue a search warrant falls within the de minimis rule. The justice of the peace testified that he had refused to issue search warrants on some occasions.

We have not overlooked Ward v. Monroeville, 409 U. S. 57 (93 SC 80, 34 LE2d 267) (1972) wherein it was held that the defendant was denied a neutral and detached judicial officer where he was compelled to stand trial before the mayor who was responsible for village finances and whose court through fines, forfeitures, costs, and fees provided a substantial portion of village funds. As stated at p. 62, footnote 2, "The question presented on this record is the constitutionality of the Mayor's participation in the adjudication and punishment of a defendant in a litigated case where he elects to contest the charges against him. . ."

We equate the instant case with Bevan v. Krieger, 289 U. S. 459, 465 (53 SC 661, 77 LE 1316) (1933) where it is stated, "The appellant Bevan also advances the contention that the notary had such a pecuniary interest in compelling the testimony as would disqualify him, and deprive his rulings of the impartiality required for due process. Notaries are entitled to fees of twenty-five cents per hundred words for taking and certifying depositions (General Code, §§ 127, 1746-2). These are paid in the first instance by the party taking the depositions, and are taxable as costs in the suit. It appears from the record that it is also customary for the notary if, as in this case, he happens to be a stenographer, to take the testimony stenographically and to furnish additional copies to the parties at a charge somewhat less per hundred words than is provided in the statute. These facts are said to bring the case within the principle announced in Tumey v. Ohio, 273 U. S. 510. But we think the suggested analogy does not exist. Tumey, as mayor of a city, sat as a magistrate. His judgments were final as to certain offenses, unless wholly unsupported by evidence. The law awarded him a substantial fee if he found an offender guilty, and none in

case of acquittal. Tumey's interest was direct and obvious; but the possibility that the extent of the notary's services and the amount of his compensation may be affected by his ruling is too remote and incidental to vitiate his official action. Moreover, his action lacks the finality which attached to the judgment in the Tumey case, as it is subject to review. . ." Thus we conclude that there is no merit to Connally's second enumeration of error.

2. In Connally's first enumeration of error he complains that the agent's mere statement that the informer consented to the eavesdropping on the informer's telephone conversation with the defendant was insufficient to satisfy Code Ann. § 26-3006,[1] and deprived Connally of his right to confront the witnesses against him. The government is privileged to refuse to identify its informers in order to encourage citizens to come forward with information relevant to law enforcement. Code Ann. § 38-1102; *Pass v. State,* 227 Ga. 730 (182 SE2d 779) (1971); *Morgan v. State,* 211 Ga. 172 (84 SE2d 365) (1954). Connally urges, however, that Roviaro v. United States, 353 U. S. 53, 60 (77 SC 623, 1 LE2d 639) (1957) must be read to require disclosure "[w]here the disclosure of an informer's[2] identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, . . ." Since the admissions of Connally would thus be inadmissible without the informer's consent, he claims the informer's identity was "essential to his defense" in that only the informer could refute the detective's statement that consent was given. We disagree.

---

[1]"Nothing in section 26-3001 [which makes eavesdropping illegal] shall prohibit the interception, recording and divulging of a message sent by telephone . . . in those instances wherein the message shall be initiated or instigated by a person and the message shall constitute the commission of a crime or is directly in the furtherance of a crime, provided at least one party thereto shall consent."

[2]The informer in Roviaro was in fact a decoy.

Without deciding whether or not this rule is applicable to informers as well as decoys,[3] we hold that in any case, where the evidence sought from the unidentified source is required by the defendant on "the mere possibility that the police might be impeached [it] is not enough to demand disclosure of the informer's identity." *Scull v. State,* 122 Ga. App. 696, 701 (178 SE2d 720) (1970). Accord, On Lee v. United States, 343 U. S. 747 (72 SC 967, 96 LE 1270) (1952); United States v. Soles, 482 F2d 105 (2d Cir., 1973). This is especially true where, as here, the detective's testimony that the call was placed by him from his own home, that the informer and he pulled extension phones into the hallway where the detective, with a rag over his phone, could signal to the informer as to what to say, and that the informant met with the Walker County investigators in the detective's company lends credibility to his assertion that the informer in fact consented. We find no abuse of discretion by the trial court in refusing to require that the state disclose the informer's identity. *Taylor v. State,* 136 Ga. App. 31 (220 SE2d 49) (1975).

3. There is no merit to Connally's third contention that the court erred in failing to give his requested charges on joint occupancy as the substance of these requests was covered by the charge given.

4. The fact that the defense offered an expert witness who testified that Cannabis sativa L. and indica were separate species did not require the trial court to direct a verdict of acquittal. Although the state's expert from the crime lab admitted that his tests did not distinguish among Cannabis sativa L., indica, or roteralis, he also stated that the majority view was that these were all varieties of the species Cannabis sativa L.,[4] possession of which is proscribed by the law. The credibility of these experts was a question properly left to the jury and the court so charged. We hold that the trial court did not err in failing to direct a verdict for Connally. See *Boyd v. State,*

---

[3] See Agnor, Ga. Evidence, §§ 6-8 (1976).

[4] " 'Marijuana' means all parts of the plant Cannabis sativa L., whether growing or not, . . ." Code Ann. § 79A-802 (o).

207 Ga. 567 (63 SE2d 394) (1951). See also *Ginn v. Morgan,* 225 Ga. 192 (167 SE2d 393) (1969).

The evidence was sufficent to support the verdict.

*Judgment affirmed. All the Justices concur, except Hall, J., who concurs in Divisions 2, 3, and 4 and the judgment, and Gunter and Hill, JJ., who dissent.*

ARGUED FEBRUARY 9, 1976 — DECIDED JULY 9, 1976.

*Hatcher & Daniel, David P. Daniel,* for appellant.

*Earl B. Self, District Attorney, Jon B. Wood, Assistant District Attorney, Isaac Byrd, Staff Assistant Attorney General,* for appellee.

GUNTER, Justice, dissenting.

The appellant was indicted, tried, and convicted for having marijuana in his possession and under his control, in violation of the Georgia Controlled Substances Act. He has appealed his conviction and one of his enumerated errors here is: "The court erred in denying the appellant's motion to suppress certain alleged evidence which was admitted and used against the appellant in the Superior Court of Walker County."

The appellant moved in the trial court to suppress evidence obtained by law enforcement officers as the result of a search made pursuant to a warrant issued by a Justice of the Peace. The motion contended that the search violated the Georgia Constitution and the Fourth and Fourteenth Amendments to the United States Constitution in that the warrant "was not issued by a neutral and detached magistrate." The motion further contended that the Justice of the Peace who issued the warrant was compensated solely on the fee system, that if he issued a search warrant he was compensated the sum of five dollars, and that if he did not issue the requested search warrant, he was not compensated at all. Code Ann. § 24-1601.

Paragraph 10 of the motion to suppress stated: "Because of these constitutional provisions, the defendant is entitled to have a neutral and detached magistrate

decide whether or not probable cause existed for the issuance of a search warrant and in this case as is indicated by the record, and is amply illustrated by the fact that the issuing magistrate had a financial interest in issuing the warrant and would have lost money had he not issued the warrant, there was no neutral and detached magistrate and thereby, the search of the defendant's premises was unreasonable."

I conclude that the motion to suppress the evidence should have been granted by the trial judge, the evidence should not have been used in the trial against the defendant, and I would reverse the judgment.

In Shadwick v. City of Tampa, 407 U. S. 345, 350 (1972), the United States Supreme Court said: "The substance of the Constitution's warrant requirements does not turn on the labeling of the issuing party. The warrant traditionally has represented an independent assurance that a search and arrest will not proceed without probable cause to believe that a crime has been committed and that the person or place named in the warrant is involved in the crime. Thus, an issuing magistrate must meet two tests. He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search. This Court long has insisted that inferences of probable cause be drawn by a 'neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' Johnson v. United States, supra, at 14; Giordenello v. United States, supra, at 486. In Coolidge v. New Hampshire, supra, the Court last term voided a search warrant issued by the state attorney general 'who was actively in charge of the investigation and later was to be chief prosecutor at the trial.' Id., at 450. If, on the other hand, detachment and capacity do conjoin, the magistrate has satisfied the Fourth Amendment's purpose."

In Coolidge v. New Hampshire, 403 U. S. 443, 453 (1971), the United States Supreme Court said: "We find no escape from the conclusion that the seizure and search of the Pontiac automobile cannot constitutionally rest upon the warrant issued by the state official who was the chief investigator and prosecutor in this case. Since he

was not the neutral and detached magistrate required by the Constitution, the search stands on no firmer ground than if there had been no warrant at all."

In Bennett v. Cottingham, 290 FSupp. 759, 762 (1968), a three-judge court said: "Since no provision of law is made for the payment of the fees of Justices of the Peace on charges based upon highway violations in the event of an acquittal or nolle prosequi, Justices of the Peace must go unremunerated unless they convict. *The scales of justice are thereby weighted on the side of a conviction.* Such a situation is interdicted by the decision in Tumey v. State of Ohio, 273 U. S. 510, 47 S. Ct. 437, 71 L. Ed. 749, where it was said:

'[I]t certainly violates the Fourteenth amendment, and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case.

'The mayor of the village of North College Hill, Ohio, had a direct, personal pecuniary interest in convicting the defendant who came before him for trial, in the $12 of costs imposed in his behalf, which he would not have received if the defendant had been acquitted. This was not exceptional, but was the result of the normal operation of the law and the ordinance.' See Hulett v. Julian, supra, where Tumey was applied under similar facts to those here involved."

Bennett v. Cottingham was affirmed by the United States Supreme Court, 393 U. S. 317 (89 SC 554, 21 LE2d 513) (1969).

See also Ward v. Village of Monroeville, 409 U. S. 57 (1972), where it was held that an accused was denied a trial before a disinterested and impartial judicial officer as guaranteed by the Due Process Clause of the Fourteenth Amendment where he was compelled to stand trial for traffic offenses before the mayor, who was responsible for village finances and whose court through fines, forfeitures, costs and fees provided a substantial portion of village funds.

The Justice of the Peace in this case, though having the capacity to issue the warrant, was not a neutral and

detached magistrate. This is so because if he made an affirmative finding 'of probable cause and issued the warrant, he was compensated; but if he rendered a finding of no probable cause, and declined to issue the warrant, he was not compensated. I simply cannot hold that neutrality and detachment exist in such a situation.

Georgia procedure provides that a defendant aggrieved by an unlawful search and seizure may move to suppress the evidence seized on the ground that a search warrant was illegally executed, and if the warrant was illegally executed, the fruit of the search "shall not be admissible in evidence against the movant in any trial." Code Ann. § 27-313.

The problem with Georgia's Justice of the Peace system in the areas of search warrants, arrest warrants, and commitment hearings is that the Justice of the Peace is compensated if he finds "probable cause" in cases in each of these three areas, but if he does not find "probable cause" in cases in each of these three areas, he is not compensated. Code Ann. § 24-1601. I believe that self-interest, whether enlightened or unenlightened, is the first principle applicable to all human beings. And applying that principle in these three areas to all Georgia Justices of the Peace, I do not think they are "neutral and detached" in making their determinations of "probable cause" in these three areas.

The Fourth Amendment and its equivalent in the Georgia Constitution (Code Ann. § 2-116) provide that "no warrant shall issue except upon probable cause." This provision in the two Constitutions is, to me, devoid of any meaning whatsoever if the state allows its officer that it has clothed with authority to be compensated with money if he finds probable cause in a particular case but denies him compensation if he does not find probable cause in a particular case. It just seems to me that the state has "stacked the deck" in its favor by authorizing payment to its judicial officers for a finding of probable cause for the issuance of search warrants, arrest warrants, and commitments by courts of inquiry.

My brothers of the majority obviously do not believe that this method of compensation for Justices of the Peace in Georgia violates either of the two Constitutions, at

least in the search warrant area. I respectfully disagree. I do not think that a warrant for the search of a citizen's house should be issued except upon determination of "probable cause" made by a neutral and detached judicial officer, one who is not compensated for a finding in favor of the state.

If the Georgia Supreme Court will not enforce this constitutional principle, it now seems that the only other place for attaining its enforcement is in the Supreme Court of the United States by a writ of certiorari. In Stone v. Powell (Number 74-1055, decided July 6, 1976), the Supreme Court of the United States has ruled that search-and-seizure claims, unsuccessfully asserted in state criminal proceedings, cannot be raised in federal habeas corpus review of state convictions.

It therefore seems to me that the court's decision in the instant case today effectively nullifies Fourth Amendment claims based on the non-neutrality of a Justice of the Peace who found probable cause for the issuance of a search warrant.

It is my view that the prosecution by the state of a criminal case, including the gathering of evidence by the state and the use of evidence by the state during a trial, is an integral part of a "fair criminal trial" that is required by the Due Process Clauses found in the Federal and Georgia Constitutions.

I further think that evidence obtained unreasonably by the state cannot be used in a criminal trial against the seizure-victim; and evidence obtained and used by the state pursuant to a search warrant issued by a judicial officer who is allowed payment if he issues the warrant but not allowed payment if he does not issue the warrant is the unreasonable attainment and use of evidence in constitutional terms.

I respectfully dissent.