## 31524. THORNTON v. THE STATE.

PER CURIAM.

This appeal is from appellant's conviction for armed robbery in the Superior Court of Carroll County for which he received a sentence of 20 years imprisonment. Some of the facts in the case are in dispute. However, the basic chronology of what happened is as follows: On October 3, 1975, a black male, armed with a shotgun, entered the Northside branch of the Carrollton State Bank and proceeded to rob it. The robber put the shotgun to the head of a bank employee, Wanda Williams, and instructed the branch manager, Charles White, to come out of his office. After threatening to shoot Ms. Williams if an alarm were sounded, he tossed a sack to the floor and told a bank customer to take it to the teller's window and fill it with money. The teller put approximately $4,000 in the bag and it was returned to the robber. The robber then fled from the scene in a 1962 or 1963 light blue or light green Pontiac.

On October 5, 1975, the police received a tip from an informer which identified the appellant as the bank robber. The appellant was arrested on October 7, and the two bank employees identified him as the robber at a lineup on the same day. Appellant was indicted by the Carroll County grand jury for armed robbery on October 8, 1975, and counsel was appointed to represent the appellant the next day.

1. Appellant's first two enumerations complain of the denial by the trial court of a defense motion to suppress the pre-trial identification of appellant made by the two bank employees. Appellant bases his argument for suppression on two theories: First, that he was denied his right to counsel at the lineup contrary to the Sixth and Fourteenth Amendments of the United States Constitution and Art. I, Sec. I, Par. V of the Georgia Constitution, Code Ann. § 2-105 (Rev. 1973); and second, that the identification procedures used were so impermissibly suggestive that they constituted a denial of due process of law.

Appellant's initial argument is that, because he was the only suspect in the case, adversary judicial

proceedings had been initiated and the failure to provide him with counsel at the lineup was error. Generally, a preindictment lineup does not trigger the right to counsel. Kirby v. Illinois, 406 U. S. 682 (92 SC 1877, 32 LE2d 411) (1972); *Painter v. State,* 237 Ga. 30, 31 (226 SE2d 578) (1976). However, see *Hicks v. State,* 232 Ga. 393, 401 (207 SE2d 30) (1974). We need not decide whether the circumstances of this preindictment lineup would require counsel because appellant was offered counsel prior to his lineup and consented, in writing, to participate without the presence of an attorney. No error is shown here.

The appellant argues further that the pre-trial identification procedures were so impermissibly suggestive that his due process guarantee of a fair trial was violated. This argument rests on two assertions. The first is that the two eyewitnesses were shown photographic displays immediately prior to the lineup. Appellant urges that this procedure so tainted the identification that the in-court identification must be set aside. The test of a photographic array is whether the "procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U. S. 377, 384 (88 SC 967, 19 LE2d 1247) (1968). A photographic array can be suggestive when used close in time to a lineup. However, we cannot conclude that the procedure used in this case satisfies the Simmons test and offended due process. The record is devoid of specifics which would substantiate a claim of misidentification. Conversely, it should be noted that both witnesses testified that they were able to identify the appellant as the criminal from his photograph. By itself, this procedure was not impermissibly suggestive. Cf. *Heyward v. State,* 236 Ga. 526 (224 SE2d 383) (1976), and Bennett v. State, 530 SW2d 511 (Tenn., 1975).

The second allegation is that the lineup itself was suggestive. The transcript does not establish that the lineup was impermissibly suggestive. Cf. Foster v. California, 394 U. S. 440 (89 SC 1127, 22 LE2d 402) (1969), and *Payne v. State,* 233 Ga. 294 (210 SE2d 775) (1974). The decisive question is whether the identifications were reliable under the totality of the

circumstances. Neil v. Biggers, 409 U. S. 188 (93 SC 375, 34 LE2d 401). See also, *Heyward,* supra, at p. 528. The transcript does contain conflicts in the evidence on the identity of appellant as the robber. However, we cannot conclude, as a matter of law, that there was such a substantial likelihood of misidentification that appellant was denied a fair trial. It all comes down to questions of credibility presented by the identification testimony of the two eyewitnesses which were resolved by the jury against the appellant. We hold that the totality of the circumstances shown here does not establish that appellant was denied a fair trial. The evidence authorized, but did not require, the jury to conclude that appellant was the perpetrator of the bank robbery. These enumerations of error are, therefore, without merit.

2. Appellant next contends that it was error for the trial court to refuse to order disclosure of the identity of the informer whose tip led to his arrest. A Brady motion was made prior to trial requesting this information. At the hearing, the prosecutor asserted the so-called informer's privilege on behalf of the state. The state argued that the tipster in this case was a mere informer and that identity was absolutely privileged. Counsel for the appellant presented the theory that another individual committed the robbery and that the informer could possibly be part of a conspiracy to frame the appellant. The argument was that this other person lived in the same trailer park as appellant, that he lived there with his mother and girl friend, that he disappeared the day after the robbery and was still missing, that the informer was rumored to be female, and that the missing person closely resembled the appellant. The trial judge accepted the prosecutor's argument and declined to grant the motion without hearing evidence by deciding that the identity of the informer was absolutely privileged.

The question before us is novel because disclosure was sought pursuant to a Brady motion. Usually the privilege is invoked during a hearing on the exigency of a search warrant or an arrest warrant. See, e.g., *Keith v. State,* 238 Ga. 157; *Scull v. State,* 122 Ga. App. 696 (178 SE2d 720) (1970). In this case, however, the Brady motion brings the basic issue inherent in the informer's privilege

into sharp focus. Brady v. Maryland, 373 U. S. 83, 87 (83 SC 1194, 10 LE2d 215) (1962), held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment. . ." Brady, therefore, requires the disclosure of evidence favorable to a defendant if the evidence is material to guilt or punishment. Moore v. Illinois, 408 U. S. 786, 794 (92 SC 2562, 33 LE2d 706) (1972). The evidence is material if it "is of sufficient significance to result in the denial of the defendant's right to a fair trial" if not disclosed. United States v. Agurs, — U. S. — (96 SC 2392, 49 LE2d 342). Accord, *Hicks v. State,* 232 Ga. 393, 396, supra. Considered from this perspective, an absolute privilege against disclosure in every case involving an informer is impermissible where a Brady motion is made.

The informer's privilege is grounded in Code Ann. § 38-1102 (Rev. 1974) which states that no official shall be "called on to disclose any state matters of which the policy of the state and the interest of the community require concealment." The public policy underlying this privilege is to protect and encourage the flow of information to law enforcement officials.

The privilege was first judicially recognized in Georgia in *Anderson v. State,* 72 Ga. App. 487, 493 (34 SE2d 110) (1945), where cross examination as to the identity of an informer was held properly denied. Subsequently, *Crosby v. State,* 90 Ga. App. 63, 64 (82 SE2d 38) (1954), distinguished between a "decoy" — a person used to obtain evidence (the informer-participant) or to establish facts (the informer-witness) upon which to base a prosecution and an informer (the mere tipster) — one who provides information about criminal activity. *Crosby* held that the identity of a decoy was not privileged and must be revealed, and in *Hodges v. State,* 98 Ga. App. 97, 105 (104 SE2d 704) (1958), the identity of an informer was held to be absolutely privileged. These absolute rules had generally been followed *(Pass v. State,* 227 Ga. 730 (4) (182 SE2d 779) (1971); *Morgan v. State,* 211 Ga. 172, 177 (84 SE2d 365) (1954); *Stanford v. State,* 134 Ga. App. 61 (1) (213 SE2d 519) (1975); *Thomas v. State,* 134 Ga. App. 18 (1) (213 SE2d 129) (1975); *Welch v. State,* 130 Ga. App. 18,

19 (3) (202 SE2d 223) (1973); *Morrison v. State,* 129 Ga. App. 558 (5) (200 SE2d 286) (1973); *Butler v. State,* 127 Ga. App. 539 (2) (194 SE2d 261) (1972); *Staggers v. State,* 101 Ga. App. 463, 465 (114 SE2d 142) (1960); *Smallwood v. State,* 95 Ga. App. 766 (1) (98 SE2d 602) (1957); *Roddenberry v. State,* 90 Ga. App. 66 (82 SE2d 40) (1954)), until the United States Supreme Court held, in a case involving a decoy, that the due process concept of fundamental fairness required that the public interest in protecting the flow of information to law enforcement officials be balanced against the right of the accused to a full and fair opportunity to defend himself. Roviaro v. United States, 353 U. S. 53 (77 SC 623, 1 LE2d 639) (1956).[1]

The Georgia Court of Appeals recognized this principle and expressly abandoned the absolute approach in favor of a case-by-case determination by the trial judge in all cases where a decoy, an informer-witness or informer-participant, is involved who may be able to provide evidence material to the defense. See *Taylor v. State,* 136 Ga. App. 31 (220 SE2d 49) (1976). See also *Estevez v. State,* 130 Ga. App. 215 (3) (202 SE2d 686) (1973). This court approved the adoption of the Roviaro rule in *Connally v. State,* 237 Ga. 203 (227 SE2d 352) (1976), and it is now well established as the law of Georgia.

It is clear then that the basis of both Brady and Roviaro is fundamental fairness to the accused.

---

[1] Additionally, we note that several United States Courts of Appeal have ruled in favor of in camera consideration by the trial judge to determine if the privilege is proper in a particular case. See e.g., United States v. Jackson, 384 F2d 825 (3rd Cir., 1967), cert. denied sub nom Jackson v. United States, 392 U. S. 932 (88 SC 2292, 20 LE2d 1390) (1968); McLawhorn v. North Carolina, 484 F2d 1 (4th Cir. 1973); United States v. Soles, 482 F2d 105 (2d Cir., 1973); United States v. Lloyd, 400 F2d 414 (6th Cir., 1968); United States v. Hurse, 453 F2d 128 (8th Cir., 1972); United States v. Rawlinson, 487 F2d 5 (9th Cir., 1973).

Therefore, they must be read together where, as here, the question is disclosure of the identity of the state's informer-witness or informer-participant if material to the defense on the issue of guilt or punishment.

When such an informer's identity is required under the standards set forth in Brady, the trial court must go further and weigh the materiality of the informer's identity to the defense against the state's privilege not to disclose his name under Roviaro. In most instances, where the information is material under Brady, it will also be required under Roviaro. But this may not always be so and to do otherwise is to abrogate entirely the state's privilege whenever a Brady issue is successfully raised by the defendant.

We would add that if the state *proves* to the court's satisfaction that the informer is a pure tipster, who has neither participated in nor witnessed the offense, any evidence he might offer would be hearsay and inadmissible. Thus the tipster's identity could not be material to the guilt or innocence of the defendant under Brady or be relevant and helpful to the defense under Roviaro. The public policy of the state toward non-disclosure would not be overcome and the state may rely on its privilege. It follows, therefore, that if the trial court initially determines that the informer was merely a pure tipster, his identity would be privileged, and no further inquiry would be necessary.

The trial judge must, therefore, conduct a hearing on the merits of the Brady motion and if he finds the evidence material under Brady weigh it against the state's privilege under Roviaro. One of the factors important in doing this will be the type of informer involved — the informer-participant or informer-witness or the pure tipster. In this case, the trial judge erred in refusing to consider appellant's Brady motion for disclosure of the identity of the informer on its merits and in denying the motion solely on the theory that the identity was absolutely privileged. However, this error can be cured by a post-trial hearing before the judge in the trial court. If the trial judge determines that disclosure should be required in this case, a new trial must be ordered. The judgment will be affirmed with direction that the trial

court conduct a hearing to consider this issue. Appellant is granted leave to file a new appeal within 30 days of the decision by the trial judge on this issue if the decision is adverse to appellant and appellant contends the trial judge abused his discretion in his ruling.

Appellant's other enumerations of error have been reviewed and found to be without merit.

*Judgment affirmed with direction. All the Justices concur, except Gunter, J., who concurs in the judgment only, and Ingram, J., who concurs specially.*

ARGUED SEPTEMBER 15, 1976 — DECIDED JANUARY 6, 1977.

*Word, Nicholson & Cook, R. H. Nicholson,* for appellant.

*William F. Lee, Jr., District Attorney, Arthur K. Bolton, Attorney General,* for appellee.

INGRAM, Justice, concurring specially.

I concur in the majority opinion, but have some residual apprehension with the implication that the Brady standards can be negated by an application of the Roviaro case. In plain terms, does the majority really mean to say that if a trial judge decides that evidence in the hands of the state is so material to the defense that suppression of the evidence will result in an unfair trial that it may, nevertheless, be withheld by the state under its privilege? If this is the intended holding of the majority, I believe the due process clause has been dealt a body blow. It is difficult for me to accept the proposition that the state has an overriding public policy that would convict an innocent person of a crime. Theoretically, this could be the result if the majority reasoning is extended to a logical conclusion. With this reservation I wholeheartedly embrace the majority opinion and find it correct and well stated.