534

appellee.

## S90G1109. BOATRIGHT v. THE STATE.
(397 SE2d 689)

CLARKE, Chief Justice.

Boatright was convicted of trafficking in cocaine and other related offenses. The Court of Appeals affirmed the judgment, 195 Ga. App. 440 (393 SE2d 707) (1990). We granted certiorari to consider the following:

1. Whether the trial court erred in refusing to require the prosecution to disclose the identity of, and produce, the confidential informant, where as here the appellant was asserting an entrapment defense.

2. Whether the trial court erred in ruling that appellant's testimony concerning the conversations with the informant constituted inadmissible hearsay, in that appellant was asserting an entrapment defense and argued that these conversations were admissible to explain his conduct.

1. (a) Boatright contends that he is entitled to disclosure of the identity of the confidential informant because the evidence at trial was that the cocaine allegedly sold by him was received by a third person whom he believed to be a confidential informant. He relies upon *Moore v. State*, 187 Ga. App. 387 (370 SE2d 511) (1988), in which the Court of Appeals cited *Roviaro v. United States*, 353 U. S. 53 (77 SC 623, 1 LE2d 639) (1957) for this proposition:

In *Roviaro*, the Supreme Court, after applying the balancing test, held that it was prejudicial error not to reveal the informant's identity where the informant was the sole participant, other than the accused, in the transaction, and, thus, "was the only witness in a position to *amplify* or *contradict* the testimony of government witnesses." (Emphasis supplied.) Id. at 64. [Id. at 389.]

(b) The Court of Appeals held that

Boatright, however, fails the balancing test in the instant case, because even if the testimony of the informant had been made available and corroborated Boatright's explanation it would not have exculpated Boatright. By his own ad-

mission, Boatright acted at least as a "middleman" in the string of drug sales, motivated by a need for money to pay medical bills for his cancer-stricken wife. The record clearly demonstrates no harm in the non-disclosure of the informant's identity. [195 Ga. App. at 440.]

(c) Boatright's testimony at trial does not demonstrate an arguably persuasive case of entrapment. His defense of entrapment[1] consists of the following testimony:

A: Well, I had just got my wife out of a mental hospital in Savannah, and I knew I had been setup, because the way things had — the way Joe skipped on me and everything else, I felt like I had been — I had been had. So . . .

Q: What do you mean setup?

A: Well, I mean, I couldn't find him, and all at once they — everything just looked, you know, I just can't say. It just looked funny to me.

Q: Did you think it was the law that was setting you up, or did you think it was a doper setting you up, or did you know?

A: I didn't know, but I knew that I didn't want to get busted in front of all my friends, family and everything. I'd rather be busted anywhere, I just didn't want to be busted in front of my wife.

Q: So if your fear was of being busted, then your concern was about the law?

Q: You were concerned about being busted in Blackshear, so you're telling this jury that you just walked right up there, well drove right up there and walked into this trap?

---

[1] Defense of entrapment OCGA § 16-3-25:
A person is not guilty of a crime if, by entrapment, his conduct is induced or solicited by a government officer or employee, or agent of either, for the purpose of obtaining evidence to be used in prosecuting the person for commission of the crime. Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee, or with an agent of either, and he, by undue persuasion, incitement, or deceitful means, induced the accused to commit the act which the accused would not have committed except for the conduct of such officer.

A. Right.

Q. If that be so, sir, why did you not surrender yourself there at the Hardee's?

A. I tried to surrender to her at the church house. I got out walked in front of my truck, which she said she couldn't pick up on tape. And I told her, I said, "Susie, I know I've been had, here I am." Then she tried to talk me out of it. She wanted me to — she talked some other stuff, I don't remember what it was. Then I decided I would just get in my truck and see if she'd let me drive off, and I did not get to drive off.

A: I just got out to tell her, you know, that she had set me up, or I had been setup.

Under these circumstances we find that Boatright had no right to demand production of witnesses. However, under different circumstances — if the confidential informant acts as the entrapper, and if the defendant can show that he has an arguably persuasive defense of entrapment — the state might have a duty to produce such a witness.

2. Because of the disposition of the first question asked on certiorari, we need not reach the second question.

*Judgment affirmed. Clarke, C. J., Bell, Hunt, Benham, Fletcher, JJ., and Judge Bryant Culpepper concur; Smith, P. J., dissents; Weltner, J., not participating.*

SMITH, Presiding Justice, dissenting.

I disagree with the majority opinion because I believe that the identity and location of the Confidential Informant (CI), as an informer-participant, should have been provided to the appellant. That information was relevant and necessary to the appellant's defense and essential to his right to due process as guaranteed by the United States and Georgia Constitutions.

At trial, the appellant raised a defense of entrapment. He claimed that he was approached and induced, by the CI, to be the "middleman" in a series of cocaine transactions. The appellant alleged that the CI, while working for the Georgia Bureau of Investigation (GBI), initiated contact with the appellant, introduced the appellant to an undercover officer of the GBI, and delivered an amount of cocaine to that undercover agent which the CI stated was purchased from the appellant. During this initial contact between the CI and the appellant, no other person was present. As a result of a series of continuing transactions stemming from that initial contact, the appellant was arrested for trafficking in cocaine. The CI was subsequently

transported out-of-state, at the state's expense, and despite the appellant's motion, pursuant to *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), seeking the CI's identity and whereabouts, the trial court declined to compel the prosecution to release that information.

OCGA § 16-3-25 provides:

A person is not guilty of a crime if, by entrapment, his conduct is induced or solicited by a government officer or employee, or agent of either, for the purpose of obtaining evidence to be used in prosecuting the person for commission of the crime. Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee, or with an agent of either, and he, by undue persuasion, incitement, or deceitful means, induced the accused to commit the act which the accused would not have committed except for the conduct of such officer.

I believe that the appellant's testimony, along with other facts developed at trial, established enough of a question of entrapment that the trial court should have compelled the prosecution to release to the appellant the identity and location of the CI for subpoena purposes. The majority opinion infers that the appellant's testimony was the only relevant defense evidence proffered and that it did not sufficiently support the appellant's contention of entrapment. However, the record shows: first, the undercover agent did not search the CI prior to the initial transaction or witness the negotiations or conversations between the CI and the appellant at the initial buy, second, the CI, not the appellant, provided the undercover agent with the contraband then, and third, on at least one occasion the undercover agent acknowledged the alleged CI's participation in the ongoing transactions. This statement is from a taped conversation entered as state's evidence:

Undercover Agent: Well, is it — is it okay if I get in touch with you sometime without, because he's [the CI] always so hard to . . . [contact].

The appellant: Yeah, let me give you a number. . . .

The cumulative effect of this evidence is to create several questions sufficient to warrant that the appellant should have been able to subpoena the CI for testimony.

In *Roviaro v. United States*, 353 U. S. 53, 60-61 (77 SC 623, 1 LE2d 639) (1957), the United States Supreme Court held:

> Where disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair trial, the Government's privilege to withhold disclosure of the informer's identity must give way.

Because the prosecution secreted the CI to another state, the appellant's defense was severely hindered. Since the CI was the only other witness to the initial transaction, he was the only person, aside from the appellant, who could testify as to what the negotiations at the initial buy entailed. Thus, he was the only witness in a position to, "amplify or contradict the testimony of the government witnesses." Id. at 64. The full effect of this sequestration came to bear when the trial court disallowed any testimony by the appellant as to his conversations with the CI during that initial meeting. Thus, the appellant was denied any means of introducing evidence crucial to his stated defense.

This is especially egregious in light of *Brady*, supra, which calls for the disclosure of evidence favorable to a defendant, "if the evidence is material to guilt or *punishment*." *Brady v. Maryland*, 373 U. S. at 87. (Emphasis supplied.) See also *Moore v. Illinois*, 408 U. S. 786 (92 SC 2562, 33 LE2d 706) (1972). Here the ability to call the CI for testimony might have, at the very least, resulted in information which could have mitigated the appellant's punishment.

While I agree that *Roviaro*, supra, calls for a balancing test, that test is rooted in the due process concept of fundamental fairness. It balances the state's interest in protecting the flow of information to law enforcement officials against the right of the accused to a full and fair opportunity to defend himself. *Thornton v. State*, 238 Ga. 160 (231 SE2d 729) (1977). It is clear, that in this case, the detriment to the appellant's right to defend himself far outweighed the state's interest in securing the flow of information from informants. Because the state's sequestration of a crucial informer-participant prejudiced the appellant in his ability to receive a fair trial, I must respectfully dissent.

DECIDED NOVEMBER 15, 1990.

*Kenneth E. Futch, Jr.*, for appellant.
*Harry D. Dixon, Jr., District Attorney, George E. Barnhill, Assistant District Attorney*, for appellee.