## 63242. HENDERSON v. THE STATE.
## 63609. COURSEY v. THE STATE.

POPE, Judge.

Bonnie Frank Henderson and Carl Robert Coursey were jointly indicted on two counts alleging violation of the Georgia Controlled Substances Act. Count I alleged the sale of the controlled substance methaqualone; Count II alleged possession of methaqualone with the intent to distribute. Henderson was also indicted under the Habitual Offender Act, Code Ann. § 27-2511. Following their joint trial, Henderson was convicted of both counts, while Coursey was acquitted on Count I and convicted on Count II. We have consolidated our consideration of these cases on appeal.

### CASE NO. 63242

1. Henderson first enumerates as error the trial court's denial of his motion for mistrial based upon the introduction of testimony into evidence of other crimes for which he was not on trial. The offending

testimony was given by Georgia Bureau of Investigation (GBI) Agent Jackson in response to a question by the district attorney on direct examination. Agent Jackson was asked to summarize various conversations and transactions he had had with Henderson prior to Henderson's arrest. Agent Jackson responded that on several occasions they had discussed setting up a drug lab. "We never actually were able to get together on the exact terminology on ways of putting a drug lab together. I was able at a different time to purchase some machinery from Mr. Henderson. This later turned out to be stolen."

"We begin with the general rule that in the trial of a crime, evidence of other criminal acts by the defendant is inadmissible as it tends to place the defendant's character into evidence. See Code Ann. § 38-202. See also, *Bacon v. State,* 209 Ga. 261 (71 SE2d 615) (1952)." *State v. Johnson,* 246 Ga. 654 (1) (272 SE2d 321) (1980). While there are exceptions to this general rule, none is applicable in the case at bar. See generally *State v. Johnson,* supra. Nevertheless, assuming arguendo that the trial court erred in allowing the offending testimony to be introduced into evidence, any error was harmless because the evidence in this case against Henderson was overwhelming. Henderson admitted at trial that the allegations contained in the indictment had indeed transpired but asserted the defense of entrapment. Our review of the evidence in this case discloses that Henderson's entrapment defense was wholly without merit and that any rational trier of fact could have found Henderson guilty of the crimes charged beyond a reasonable doubt. "Applying the standard for harmless error set out in *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976), it can be fairly said that it was highly probable that any erroneous admission of [Agent Jackson's] testimony did not contribute to the judgment in this case." *Hamilton v. State,* 239 Ga. 72, 76 (235 SE2d 515) (1977).

2. Henderson's second enumeration cites as error the trial court's failure to require the state to disclose the identity of a confidential informant. The record discloses that Henderson sought discovery of this information by motion made in accordance with Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). Henderson requested "[t]he names, addresses, telephone numbers of any person the state knows to possess relevant information to the charges in the indictment, including but not limited to informants or confidential sources." Henderson again sought this information by motion made at the close of the state's case. Henderson, through his attorney, stated at this time that entrapment was to be his defense.

"Where an informant is a mere tipster, disclosure of his identity is not required. *Thornton v. State,* 238 Ga. 160 (2) (231 SE2d 729)

(1977). But where the informer is a witness or participant, a request for disclosure requires the trial court to balance the benefits of disclosure to the defendant against the resulting harm to the [state]. Roviaro v. United States, 353 U. S. 53 (77 SC 623, 1 LE2d 639) (1957); *Thornton,* supra. 'Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' Roviaro, supra at 62." *State v. Royal,* 247 Ga. 309, 312 (275 SE2d 646) (1981).

During argument in support of his renewed motion for disclosure, counsel for Henderson stated, ". . .[E]veryone in this courtroom over the age of three years old and who has listened to the testimony knows that Bruce Mitchell is the informant. The testimony is that the informant, whoever he [is], introduced Agent Jackson and Mr. Henderson. Mr. Henderson knows who introduced Agent Jackson to him. It was his buddy Bruce Mitchell. Nobody is trying to find some secret that they have. We know that. Now, our defense will be entrapment and it is going to be necessary that we show that Mr. Mitchell was an agent and was acting in the capacity of an agent of the state." Counsel had earlier stated that this information had been known to the defense since the day after Henderson's arrest. The trial court denied the motion to disclose.

Although Henderson asserts on appeal that disclosure of the informant's identity was necessary to the viability of his entrapment defense, he made no showing at trial as to any possible significance of the informant's testimony, only his unsupported conclusion that it was necessary. The Supreme Court's decision in ". . . Brady does not establish an inflexible principle that requires the disclosure of informants' identities or of all evidence, but only that which is 'favorable to a defendant if the evidence is material to guilt or punishment.' [Cits.] In this case, [Henderson] made no showing of, and did not in anyway call in issue, any favorability or materiality of the informant's testimony to the defense. There was, then, no request or showing which would contravene Code [Ann.] § 38-1102, which grants the privilege against disclosure. [Cit.] The question of disclosure is a matter of discretion with the trial judge (see *Boyd v. State,* [146 Ga. App. 359 (246 SE2d 396) (1978)]), which in this case was not abused." *Bennett v. State,* 153 Ga. App. 21, 27 (264 SE2d 516) (1980).

3. Thirdly, Henderson contends that the trial court erred in failing to exclude testimony relating to certain in-custody statements he had made. Although Henderson made an appropriate written request for pretrial discovery of his in-custody statements (see Code

Ann. § 27-1302), the state did not provide a copy of any such statements.

The record discloses that the state recalled two witnesses in rebuttal who were questioned as to certain in-custody statements made by Henderson after his arrest. Each of these witnesses was thoroughly cross examined by defense counsel. Only after these witnesses had completed their testimony did Henderson move to exclude the testimony as to his in-custody statements on the basis of the state's failure to comply with Code Ann. § 27-1302. The trial court ruled that, since the conversations during which Henderson had made the statements had been initiated by Henderson, and since these statements were made after the commission of the crimes, the state had no duty to disclose the statements. This ruling is an incorrect interpretation of the law.

Code Ann. § 27-1302 provides: "(a) The defendant *shall be entitled* to have a copy of *any statement* at least 10 days prior to the trial of the case *given by him while in police custody* . . . (c) Failure of the prosecution to comply with a defendant's timely written request for a copy of his statement, whether written or oral, shall result in such statement being excluded and suppressed from the prosecution's use in its case-in-chief *or in rebuttal.*" (Emphasis supplied.) Accordingly, Henderson was entitled to have his in-custody statements excluded and suppressed from the state's use at trial. *Garner v. State,* 159 Ga. App. 244 (1) (282 SE2d 909) (1981); see also *Wallin v. State,* 248 Ga. App. 29 (5) (279 SE2d 687) (1981); *Tanner v. State,* 160 Ga. App. 266 (1) (287 SE2d 268) (1981). However, when this evidence was offered by the state, Henderson made no objection to its admission. "By this action [he] waived any objection which might have been urged . . . It is well settled in this state that it is too late to urge objections to the admission of evidence after it has been admitted without objection." *Yarbrough v. State,* 151 Ga. App. 474, 475 (260 SE2d 369) (1979); *Smith v. State,* 142 Ga. App. 406 (1) (236 SE2d 107) (1977).

4. Henderson's fourth enumeration cites as error the trial court's consideration of Henderson's 1972 federal conviction of importing 1200 pounds of marijuana (a felony) for the purpose of sentencing him as an habitual offender pursuant to Code Ann. § 27-2511. Henderson contends that the importation of marijuana is not a crime punishable under the laws of this state.

Although Code Ann. § 27-2511 provides that a person's conviction of a crime under the laws of the United States may be considered for sentencing as an habitual offender if said crime is a felony if committed within this state, the statute does not indicate whether such a crime must have been a felony under Georgia law at

the time of its commission. Only since March 20, 1980 has it been a felony for any person to knowingly bring into this state (i.e., import) more than 100 pounds of marijuana. Ga. L. 1980, p. 432 (Code Ann. § 79A-811 (1)(3)). However, we decline to apply this 1980 statute to Henderson's criminal activities in 1972. See generally Code Ann. § 102-104. At the time Henderson was convicted of importing marijuana in 1972, his conduct would have been governed in this state by the Georgia Drug Abuse Control Act (hereinafter DACA), Code Ann. Ch. 79A-9, which has since been repealed. Ga. L. 1974, p. 221. DACA prohibited the possession of marijuana (Ga. L. 1967, pp. 296, 343 et seq.; 1970, pp. 470, 471) but made no mention of its importation. Nevertheless, we are persuaded that Henderson's activities in importing 1200 pounds of marijuana would have subjected him to felony prosecution under DACA.

"Possession, as we know it, is the right to exercise power over a corporeal thing; as such, possession may be actual or constructive so long as it is immediate." *Cook v. State,* 136 Ga. App. 908, 909 (222 SE2d 656) (1975). "To 'import' is to bear or carry into." Black's Law Dictionary 888 (4th ed. 1968). In our view, to import something necessarily includes the right to exercise power over it, to possess it. Cf. *Rivers v. State,* 46 Ga. App. 778 (4) (169 SE 260) (1933); *Jones v. State,* 26 Ga. App. 635 (4) (107 SE 166) (1921). Accordingly, the trial court did not err in considering Henderson's 1972 federal conviction pursuant to Code Ann. § 27-2511.

5. Finally, Henderson contends that the trial court erred by increasing his original sentence after it had been executed and he had been committed thereunder. The record shows that following the jury's verdict of guilty, the state presented evidence pursuant to Code Ann. § 27-2511 of Henderson's convictions of three prior felonies, two Georgia convictions and the federal conviction discussed in Division 4 of this opinion. The trial court then orally sentenced Henderson to serve 30 years, the maximum sentence. Code Ann. § 79A-811 (d). The court then sentenced Coursey. Immediately thereafter, as the clerk was writing out Henderson's sentence, the state suggested, and the court concurred, that language should be added to Henderson's sentence to reflect that he had been sentenced pursuant to Code Ann. § 27-2511. Counsel for Henderson noted that this proposed addition was being made outside Henderson's presence. Therefore, the trial court ordered Henderson returned to the courtroom. The language proposed by the state was then written upon his sentence in his presence, and the trial court re-executed the sentence.

Henderson contends on appeal that the effect of the language added to his sentence was to increase his sentence because, as this was his fourth felony conviction, he would not be eligible for parole under

the terms of Code Ann. § 27-2511. Henderson also contends that he had already commenced serving his sentence because the sheriff had taken him away prior to the language having been added to his sentence; therefore, the trial court was without authority to change his sentence.

"While it is true that an oral sentence is not a binding judgment of the court, the law is also clear that once a person has entered upon the execution of his sentence, the court is without power to change it by increasing the punishment. This is considered a violation of the Fifth Amendment prohibition against double punishment or jeopardy." *Inman v. State,* 124 Ga. App. 190, 192 (183 SE2d 413) (1971). However, "[t]here is authority, when there is an error or irregularity in failing to inform the defendant of conditions under which his sentence to confinement was imposed, for correction by the court by recalling the defendant and sentencing him as provided by law." *Hinton v. State,* 127 Ga. App. 853, 854 (195 SE2d 472) (1973). "Here the record shows, without dispute, that the amended sentence is *identical to the intended original* sentence. Here the amended sentence is corrected to the oral pronouncement of the trial court and to the defendant's original understanding of his sentence. In short, this case involves not an increase of sentence but merely a correction to make the sentence speak the truth. That such a correction is within the power of the court is undisputed. *Gobles v. Hayes,* 194 Ga. 297 (1) (21 SE2d 624) (1942). [Henderson's] argument that this power to correct errors is abrogated once a defendant begins to serve a sentence is unsupported by federal or state cases, and is contrary to reason as well as [the] holding in *Hopper v. Williams,* [238 Ga. 612 (234 SE2d 525) (1977)]." *Johnson v. Gooding,* 242 Ga. 793, 795 (251 SE2d 534) (1979).

## Case No. 63609

6. Coursey's first and second enumerations cite as error the trial court's failure to sever his case from Henderson's for trial. In a motion made prior to trial Coursey contended that he could not receive a fair and impartial trial if he were tried with Henderson, who was accused as an habitual felon. Coursey renewed his motion for severance (in the form of a motion for mistrial) after Henderson had admitted his own participation in the crimes charged and also had testified as to his past criminal record.

When presented with a motion for severance, the trial court must exercise its discretion in contemplation of the facts of that particular case. The burden is on the defendant requesting severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal; he must make a clear showing of

prejudice and a consequent denial of due process. *Cain v. State,* 235 Ga. 128 (218 SE2d 856) (1975). Two of the several considerations for the trial court in exercising its discretion are (1) whether there is a danger that evidence admissible against one defendant will be considered against another despite the admonitory precaution of the court, and (2) whether the defenses of the defendants are antagonistic to each other or to each other's rights. *Id.*

Viewed in a light most favorable to upholding the verdict, the transcript shows that the two illegal drug transactions alleged in the indictment both occurred at Coursey's place of business; that Coursey had stated to an undercover GBI agent that he "worked for" Henderson; that Coursey was present on the premises when the second transaction occurred (Count II); that he knew the second transaction was scheduled to occur; and that he acted as a lookout while this transaction took place. Coursey testified at trial that he had no knowledge of the illegal drug transaction, and Henderson also testified that Coursey had nothing to do with the subject transaction. "The jury was obviously not persuaded by [defendants' testimony]. In our view, the evidence presented against [Coursey] was not so slight that he was convicted merely by his association with [Henderson] or by being enveloped within a vague, generalized notion that his mere presence [on the premises] was tantamount to his having participated in the crimes charged. Although the state submitted more evidence against [Henderson] than against [Coursey], we do not believe it highly probable that [Coursey] was *convicted as the result of a spillover of the greater volume of evidence adduced solely against [Henderson].*" *Parrish v. State,* 160 Ga. App. 601, 603 (288 SE2d 94) (1981). Moreover, even if the defendants' defenses could be said to have been antagonistic, since co-defendant Henderson testified at trial, exculpating Coursey on cross examination by Coursey's counsel, there has been no showing of harm such as would have warranted separate trials. *Everett v. State,* 238 Ga. 80 (230 SE2d 882) (1976); *Cain,* supra; *Parrish,* supra. We find no abuse of discretion in the trial court's denial of Coursey's motions to sever.

7. Coursey thirdly enumerates as error the trial court's failure to give the following request to charge: "Gentlemen, I further charge you if you find that the evidence against CARL ROBERT COURSEY is so slight, he should not be convicted merely by association, or as a result of some spillover of the substantial evidence adduced against his co-defendant." Even though this request to charge was developed from this court's opinion in *Price v. State,* 155 Ga. App. 844 (1) (273 SE2d 225) (1980), ". . . language of a reviewing court's opinion is not necessarily appropriate for use by a trial judge

in charging the jury." *Bailey v. Todd,* 126 Ga. App. 731, 736 (191 SE2d 547) (1972). This request contained language which, if given, would have been an impermissible expression of opinion by the trial court on the facts of this case. Code Ann. § 81-1104. Therefore, the trial court did not err in refusing to give this requested charge. See *Worsham v. Ligon,* 144 Ga. 707 (3) (87 SE 1025) (1915).

8. Coursey's fourth enumeration asserts as error the trial court's "over-emphasizing the words 'party to a crime' " during a portion of the charge to the jury. The trial court instructed the jury as to how to complete the form provided for their verdicts. While the trial court displayed the form, the jury was instructed that, if they felt the state had proven that Coursey was a "party to the crime" beyond a reasonable doubt, it was their duty to mark the form accordingly. This instruction and display were not an expression or intimation by the trial court as to what had or had not been proved or as to Coursey's guilt and, therefore, were not error. Compare *Gaither v. State,* 234 Ga. 465 (2) (216 SE2d 324) (1975); see also *Caraway v. State,* 72 Ga. App. 504 (2b) (34 SE2d 303) (1945).

9. Coursey's final enumeration cites as error the trial court's denial of his motion for directed verdict of acquittal made at the close of all the evidence. "Code Ann. § 27-1802 (a) . . . provides that '(w)here there is no conflict in the evidence, and the evidence introduced, with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal' the court may direct a verdict of acquittal. Suffice it to say, the circumstantial evidence of the state was in conflict with the direct evidence of defendants. Further, all reasonable inferences and deductions from such evidence did not demand a verdict of acquittal [as to Count II of the indictment] — as the jury pointed out . . . Thus, defendant [Coursey] was not entitled to a directed verdict." *Collins v. State,* 146 Ga. App. 857, 860 (247 SE2d 602) (1978); *Vilicic v. State,* 152 Ga. App. 207 (1) (262 SE2d 502) (1979). Viewing the evidence in a light most favorable to the state, we conclude that any rational trier of fact could have found Coursey guilty beyond a reasonable doubt of possession of methaqualone with the intent to distribute. Accord, Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED APRIL 21, 1982 —
REHEARING DENIED MAY 12, 1982 IN CASE NO. 63242 —

*J. Roger Thompson,* for appellant (case no. 63242).

*Nicholas E. Bakatsas,* for appellant (case no. 63609).

*Thomas J. Charron, District Attorney, Joseph L. Chambers, Assistant District Attorney,* for appellee.

ON MOTION FOR REHEARING.

In reference to Division 3 of this opinion, appellant Henderson contends that his "motion to strike" the evidence as to his in-custody statement was timely so as to preserve the issue for appeal. This "motion to strike" was made after two witnesses had been subjected to direct and cross examination relating to the statement and their testimony had been completed. In support of his contention Henderson cites *Blount v. Beall,* 95 Ga. 182 (4) (22 SE 52) (1894), and its progeny. "A motion to rule out testimony illegally admitted even without objection is never too late until the cause is finally submitted to the jury. If the testimony is illegal, it should not be considered by the jury, and if it is not to be considered by the jury, it should not be admitted for their consideration." *Id.* at 189.

We are here dealing with testimony relating to an in-custody statement, the voluntariness of which was not challenged. The admission of such statement under this circumstance was not error. *Taylor v. State,* 143 Ga. App. 881 (2) (240 SE2d 236) (1977). Accordingly, the subject testimony was not "illegally admitted." As stated by our Supreme Court in *Patton v. Bank of LaFayette,* 124 Ga. 965, 974 (53 SE 664) (1905): "[A] distinction is to be drawn between illegal testimony and secondary evidence or other evidence which is legal in itself because it is of probative value but is inadmissible until the proper foundation for its reception has been laid."

The General Assembly has seen fit to endow criminal defendants with certain discovery rights and has also provided a method for enforcement of those rights. *Garner,* supra. However, while the state's failure to comply with the discovery statute may render certain evidence inadmissible, such failure does not affect the probative value of the evidence. See generally *Tanner,* supra. Hence, such evidence is not "illegal."

The general rule cited by this court in *Reid v. State,* 129 Ga. App. 660 (2c) (200 SE2d 456) (1973), is applicable to situations such as that presented here. "When testimony is tendered an objection must be made, affording the court opportunity to rule upon the admissibility of the testimony upon the grounds then urged and in the context of the matter as it then appears, and *failure to make a timely objection to testimony when it is offered results in a waiver of any objection that might have been urged.* [Cits.] 'All evidence is admitted as of course unless a valid ground of objection is interposed, the burden being upon the objecting party to state *at the time* some specific reason why

it should not be admitted.' " (Emphasis supplied.) *Id.* at 663:
  *Judgment adhered to.*