72828. RODEN v. THE STATE.
(351 SE2d 713)

BEASLEY, Judge.
Roden appeals from his conviction and sentence for the offense of

selling marijuana on May 20, 1984, in violation of the Georgia Controlled Substances Act, OCGA § 16-13-30.

Viewed in a light most favorable to the verdict, *Wallace v. State,* 178 Ga. App. 876 (344 SE2d 770) (1986), the circumstances giving rise to Roden's arrest were these: An eight-month undercover drug operation began in Walker County in August 1983. On May 20, 1984, GBI agents Parker and Harris were introduced to Roden at his trailer by a confidential informant. When the agents and the informant entered through the front door of the trailer, they saw a plate containing marijuana on the coffee table in the living room. Roden asked the agents if they "wanted to burn one," which the agents understood to mean did they want to smoke a marijuana cigarette. Roden rolled up the cigarette, lit it and passed it around the room, and the agents simulated smoking.

While in the living room, Roden indicated he had some "Columbian" for sale, meaning that he had for sale Columbia-grown marijuana supposedly higher in THC content. When Parker said he would like some Columbian, Roden indicated that he also had some "sensi," which is short for sinsemilla, another potent variety of marijuana. Roden told Parker it would be $25 for a "quarter" of sensi, meaning a quarter of an ounce, and $20 for a quarter of an ounce of the Columbian marijuana. Parker agreed to purchase the Columbian.

Roden took the agent into the trailer's kitchen area, opened one of the cabinets and got out a clear plastic bag. He then walked into the back part of the trailer and returned about three minutes later with a set of triple beam scales which he set on the kitchen table. The agents had made various other drug buys where such a precise scale had been used to weigh contraband. Roden weighed out the quarter ounce of marijuana and went back into the living room area, picked up a few more marijuana leaves out of the bowl, and added them to the marijuana in the plastic bag to show Parker that he was "getting a little extra." Parker handed Roden $20 for the marijuana and told him that he would be back at a later time for sensi. The agent personally transported the marijuana to the crime lab.

During all of this, according to the agents, the confidential informant just sat in the living room watching television and did not enter into the conversation or accompany Roden and the agent to the kitchen.

1. In four enumerations, Roden claims error committed by the trial court in its handling of disclosure in regard to the confidential informant. He asserts that the trial court erred in failing to require the state to reveal the identity of the confidential informant and whether the informant obtained any benefits or promises for any cooperation in the case; in failing to require the State to disclose excul-

patory evidence pursuant to *Brady v. Maryland*,[1] which was disclosed to the court *in camera* and in failing to record the proceedings *in camera*; in sustaining the state's objection to the introduction of certified copies of indictments, pleas and sentences imposed on one Westmoreland, the individual whom Roden contends was the confidential informant and whom he also contends "entrapped him into the commission of the offenses charged"; and in denying his *Brady* motion that counsel be informed of any plea negotiations or agreements between the state and Westmoreland and that such be disclosed to the jury.

For the purpose of resolution, these assertions are bound together. They grow out of Roden's defense that he was entrapped to commit the drug offense by an individual named Westmoreland.

In the first place, agents Parker and Harris flatly denied at trial that the confidential informant accompanying them to Roden's trailer for the subject marijuana buy on May 20 was Westmoreland.

Roden testified at trial that he knew Westmoreland through his (Roden's) brother; that sometime in May of 1984 Westmoreland came by his trailer with a paper sack containing scales and marijuana; that Westmoreland did this without Roden's request; that he and Westmoreland smoked some of the marijuana (Roden admitted that he had smoked marijuana since age 17); that Westmoreland began to weigh out the marijuana and place it in small individual bags; and that he had agreed to keep the marijuana at his trailer for Westmoreland because Westmoreland told him a "pitiful" story that Westmoreland's wife did not like having the marijuana at home.

Roden further testified that Westmoreland brought several individuals by the trailer but he could not recall whether or not agent Parker was one of them. He said that Westmoreland came by on the 20th and asked him to sell some marijuana to "his friends," that he just handed Westmoreland's marijuana to him, that Westmoreland rolled a marijuana cigarette and then "passed it around," that Westmoreland handed some to the friend, and that the friend handed Roden the money. Roden maintains that "[w]henever the GBI officer left out of the room," he handed the money to Westmoreland. During cross-examination, Roden admitted that he had also sold some PCP (phencyclidine) but that this drug was also provided by Westmoreland.

A third undercover GBI agent, Whitaker, testified on rebuttal that he met with Roden at his trailer on May 23, three days after the drug transaction forming the basis of the indictment on which Roden was tried, and that he was introduced to Roden by an informant who

---

[1] 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

apparently *was* Westmoreland. Whitaker testified that he purchased marijuana from Roden and inquired about purchasing PCP, but was told that PCP would be available for sale by the weekend. Whitaker indicated that Westmoreland was present in another part of the trailer but did not participate in the drug sale. Whitaker further testified that on Sunday he returned to Roden's trailer alone and purchased two grams of PCP for $200.

Defendant petitioned the trial court for a confirmation that Westmoreland was a confidential informant in the case because he contended "that [Westmoreland] rose to a status higher than that of a mere tipster and became, under the evidence as we have presented, a participant in the alleged offense, and a witness to the alleged offense." He also offered Westmoreland's pleas, convictions, and sentences, as part of the evidence to support the theory that Westmoreland entrapped him and that Westmoreland's motive for doing so was to get a lighter sentence on his own drug charge.

The court weighed the evidence, citing the applicable case law, and sustained the state's objection to defendant's requests.

"Public policy in Georgia favors nondisclosure of the identity of an informant in the interest of the free flow of information about criminal activity. [Cit.]" *Grimes v. State*, 168 Ga. App. 372, 376 (5) (308 SE2d 863) (1983). But this is not conclusive. "*Brady v. Maryland*, 373 U. S. 83, 87 (83 SC 1194, 10 LE2d 215) (1962), held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . .' . . . The evidence is material if it 'is of sufficient significance to result in the denial of the defendant's right to a fair trial' if not disclosed. [Cits.] Considered from this perspective, an absolute privilege against disclosure in every case involving an informer is impermissible where a *Brady* motion is made." *Thornton v. State*, 238 Ga. 160, 163 (231 SE2d 729) [(1977)].

" '(T)he basis of both *Brady* and *Roviaro* [*Roviaro v. United States*, 353 U. S. 53 (77 SC 623, 1 LE2d 639) (1956)] is fundamental fairness to the accused. Therefore, [*Brady* and *Roviaro*] must be read together where, . . . the question is disclosure of the identity of the state's [informant] . . .

" '[T]he trial judge must, therefore, conduct a hearing on the merits of the *Brady* motion and if he finds the evidence material under *Brady* weigh it against the state's privilege under *Roviaro*. . . .' " *Davidson v. State*, 156 Ga. App. 457, 459 (3) (274 SE2d 807) (1980); *Williams v. State*, 178 Ga. App. 581, 585 (3) (344 SE2d 247) (1986).

"Disclosure could be material to the defense where the informant is a witness or a participant, or entrapped a defendant into committing a crime he would not otherwise have committed." *Grimes v.*

*State*, supra at 376 (5).

"However, if the court is satisfied that the informant was merely a tipster, that he did not participate in or witness the alleged crime, no further inquiry is necessary and the informant's identity remains privileged. [Cits.]" *Dyer v. State*, 162 Ga. App. 773, 774 (2) (293 SE2d 42) (1982).

Here, the court considered the evidence, in compliance with *Thornton v. State*, supra. It demonstrates that the confidential informant in the May 20 incident was not Westmoreland and that the informant did not participate at all in the drug transaction. *Dyer v. State*, supra at 774 (2). Although the confidential informant may have been a witness to the conversation, if he was listening, he was not a witness to the transaction itself. Roden did not seek the informant's testimony concerning the transaction on May 20 but rather the disclosure that the informant was Westmoreland so as to support his defense that Westmoreland's earlier set-up entrapped him. But when it was established to the court's satisfaction that the person present on May 20 was not Westmoreland, the further identity of that person was not shown by Roden to be needed for any purpose. *State v. Royal*, 247 Ga. 309 (2) (275 SE2d 646) (1981). Even an introducer who witnesses a sale need not be disclosed as a matter of law. *Carter v. State*, 165 Ga. App. 427 (301 SE2d 658) (1983). The court's balancing of the competing interests and, based thereon, denying disclosure, was not error. *May v. State*, 179 Ga. App. 736, 737 (3) (348 SE2d 61) (1986).

As to the defense of entrapment by Westmoreland, even if we assume *arguendo* Roden's version of the events concerning Westmoreland, "[t]he evidence demands a finding of sale of marijuana. The fact that the defendant made no profit on the transaction, if he did not, and the fact that he procured the drug on request, do not taken separately or together demand a finding that he was entrapped into the commission of a crime." *Huskey v. State*, 139 Ga. App. 752, 753 (2) (229 SE2d 547) (1976); *Watkins v. State*, 170 Ga. App. 678 (318 SE2d 73) (1984). Moreover, "the use of an informant to introduce an undercover agent to the accused, who then carries on the transaction with the agent, does not constitute entrapment. [Cit.]" *Pennyman v. State*, 175 Ga. App. 405, 407 (1) (333 SE2d 659) (1985); OCGA § 16-3-25.

During the course of the trial, the state reminded the court of defendant's broad *Brady* motion, and the court's earlier request of the state that it bring to the court's attention any information which it "might consider to be potentially exculpatory." The court determined it would conduct an *in camera* inspection of the state's file, and counsel for the state informed the court that he needed to supplement the state's file with "testimonial evidence or have the court

reporter take down the information." Thereupon the court adjourned to chambers for the purpose of conducting the *in camera* inspection. After this recess, the court informed defense counsel that it had heard a sworn statement by counsel for the state, felt there was nothing exculpatory, and requested the state to reduce the statement to writing so the court might review it and make a definitive ruling the following day.

The court reviewed the narrative and, based on it and what the court had heard and observed the day before, ruled that the state would not be required to furnish the information to defense counsel.

We have independently reviewed the evidence which was inspected by the trial court *in camera* and find that the evidence was not exculpatory and thus the trial court did not abuse its discretion in its rulings regarding exculpatory evidence, inasmuch as the evidence did not relate to defendant's guilt or innocence. *Wilson v. State*, 246 Ga. 62, 65 (1) (268 SE2d 895) (1980); *Davidson v. State*, supra; *Williams v. State*, supra.

This supports the propriety of the determinations of nondisclosure regarding the confidential informant. *May v. State*, supra.

2. Appellant also maintains that the trial court erred in failing to direct a verdict of acquittal based upon the defense of entrapment.

This enumeration is without merit as we have already determined that Roden did not present a situation of entrapment as a matter of law. See Division 1, supra. *State v. Royal*, supra.

3. Appellant urges that the trial court erred in sustaining the state's objection to testimony by Roden's wife as to an alleged conversation between Westmoreland and Roden on some date earlier than the transaction on trial.

As we have discussed, Roden contended throughout that the confidential informant involved in his case was Westmoreland, and that he entrapped Roden into selling the drugs as a "favor" to Westmoreland. Roden called his wife to testify in support of such contention. Mrs. Roden testified that prior to May 20 an individual named Joe Westmoreland had come to their trailer and had brought a brown paper sack containing marijuana and some scales. Defense counsel asked Mrs. Roden if she had been present when her husband and Westmoreland talked about the sale of marijuana. She responded affirmatively. Defense counsel then asked: "Would you tell the Court and the jury what was said, or when that occurred?" The state objected on the basis that the testimony sought would be inadmissible hearsay. The defendant argued for admission of the testimony as original evidence, citing the predecessor of OCGA § 24-3-2, but the court sustained the state's objection.

The application of this statute is governed by its construction in *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982) and *Teague*

*v. State*, 252 Ga. 534 (314 SE2d 910) (1984). Even if Roden's motive in selling the drugs on May 20 was merely to help Westmoreland out, it would not relieve Roden of criminal responsibility. *Huskey v. State* and *Watkins v. State*, supra. Thus, his motive was not at issue, the effect of the conversation on his conduct on May 20 was not at issue, and the conversation was not admissible as original evidence.

Moreover, at most it would have been cumulative of Roden's testimony that Westmoreland brought the marijuana and scales to the trailer and requested Roden to house and sell the drugs. *Wilbanks v. State*, 165 Ga. App. 876, 878 (4) (303 SE2d 144) (1983).

The trial court did not err in sustaining the state's hearsay objection in regard to Mrs. Roden's testimony about what Westmoreland and Roden said to each other on that earlier occasion.

4. Lastly, appellant maintains that the trial court erred in failing to give his requested charge on entrapment. Although he concedes that the trial court gave the pattern jury instruction, he contends that it failed to adequately inform the jury as to the "issues being tried by them."

The court did not charge the specific language dealing with the defense of entrapment as requested by defendant, but it adequately and fully informed the jury of the elements of the defense of entrapment, and of the state's burden of proving beyond a reasonable doubt that the defendant was not entrapped, once the defense has been raised. It is not "necessary to give the exact language of requests to charge when the same principles are fairly given to the jury in the general charge of the court." *Shirley v. State*, 245 Ga. 616, 619 (3) (266 SE2d 218) (1980).

*Judgment affirmed. Benham, J., concurs. Deen, P. J., concurs in the judgment only.*

DECIDED DECEMBER 4, 1986 —
REHEARING DENIED DECEMBER 17, 1986 — 

*William Ralph Hill, Jr.*, for appellant.
*David L. Lomenick, Jr., District Attorney*, for appellee.