73536. THE STATE v. MASON.
(353 SE2d 915)

BIRDSONG, Chief Judge.

The defendant Ernest P. Mason is charged with possession of more than a pound of marijuana with intent to distribute, based upon the execution of a search warrant obtained by affidavit wherein the

affiant officer reported a confidential informant alleged the substance to be in defendant's possession. The defendant filed a motion to suppress on grounds the affidavit contained certain deliberate falsifications. At the motion to suppress hearing, defendant sought to produce as a witness John Doe, whom he had subpoenaed, to prove the confidential informant did not tell the officer what the affidavit asserted.

The State objected to the production of this witness by saying: "[We] are going to object to anyone being required to testify that he was or was not an informant with respect to the warrant issued in this case." The defendant asserted that he was not asking the State to divulge the identity of its confidential informant, but was seeking merely to exercise his right of compulsory process to prove by his own witness a falsified affidavit and, therefore, the absence of probable cause. Ultimately, the trial court ruled that the State's invocation of an absolute privilege against being required to produce, or allow testimony of, a confidential informant operated to bar the defendant from asserting the testimony of John Doe "which, if heard, could constitute the necessary offer of proof . . . of deliberate falsehood or reckless disregard of truth by the [affiant]." Thereupon, the trial court suppressed the evidence without any determination in camera. *Held:*

1. The appellee defendant contends the State waived, induced or acquiesced in any error in granting the defendant's motion to suppress, by inviting the trial court grant the motion: "I would ask the Court to allow us to assert [the informer] privilege at this time, and if the result of that is granting the Motion to Suppress, well then that of course would be the result of it." The State also said: "I would ask the Court to . . . allow me to assert the State's privilege and if this frustrates the defense's ability to prosecute the Motion to Suppress, I would invite the Court to grant the Motion to Suppress; *but, Your Honor, I feel that the issue must be preserved here, we cannot go merrily along and accomplish what the State has a right to preserve, one way or the other, either by virtue of an appeal, or by virtue of prosecutorial discretion as to whether or not to prosecute.*" (Emphasis supplied.)

Neither the defendant nor the trial court thought the State was acquiescing in an adverse ruling. They discussed the form of the ruling, and the trial court said: "I think that gives you a clear appeal." The State replied: "I believe that fits exactly the contentions of both parties. . . ." The defense attorney then said: "I think the record would clarify [the court's conclusions] if the appeal becomes necessary." It is clear the State did not as a matter of fact acquiesce in the suppression of the evidence or waive its right to object to it in an appeal. In fact, the State clearly indicated it intended to appeal. To infer that the State wanted the trial court to suppress this evidence would fly in the face of common sense. Moreover, the law does not

take waivers lightly, and a waiver of the important right to appeal an adverse ruling should not be inferred unless it is clear and unmistakeable.

"Induced error" commonly refers to an error in the proceedings that is caused by or elicited by the one complaining of it. See *Burrell v. State*, 171 Ga. App. 648, 649 (320 SE2d 810). The State did not commit error or induce a wrong ruling by asserting the informer privilege, and inviting the court to rule as it must. The State asserts its privilege knowing that if in the court's opinion the privilege materially frustrates the defendant's right to prove lack of probable cause, the evidence will be suppressed and there can be no prosecution and no trial. In this context, the State's "invitation" to the trial court to grant the motion if it must, in fact amounted to *an insistence upon the privilege and an adamant refusal to waive it*. We thus decline to hold that by the very act of asserting its privilege the State waived it, or the right to appeal the suppression of the evidence.

2. The defendant grounds his motion to suppress, and the trial court its ruling, on *Franks v. Delaware*, 438 U. S. 154 (98 SC 2674, 57 LE2d 667), which defendant contends allows him to attack the warrant by subpoena to the confidential informant, upon a substantial preliminary showing that probable cause was based upon "deliberate false or reckless disregard for the truth."

The Supreme Court in *Franks* held that a defendant is entitled to a hearing whereat to challenge the truthfulness of the *affiant's* factual statements in an affidavit for a search warrant, if the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth, was included in the affidavit by the affiant. However, the Supreme Court expressly declined to decide "the difficult question whether a reviewing court must ever require the revelation of the identity of an informant once a substantial preliminary showing of falsity has been made." Id. p. 170.

In *Colorado v. Nunez*, 465 U. S. 324, (104 SC 1257, 79 LE2d 338) the Supreme Court dismissed a writ of certiorari to a Colorado case suppressing evidence for the State's refusal to disclose a confidential informant upon a challenge to the *informant's* veracity; certiorari was dismissed apparently on the basis that the Colorado court could in its discretion require disclosure on more liberal grounds than assured by the Federal Constitution. Three members of the court pointed out that neither the Federal Constitution nor any decision by the Supreme Court requires the result reached by the Colorado Supreme Court, and said at pp. 326-327: "[T]his Court 'has consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial, let alone in a preliminary hearing to determine probable cause' . . . . Nothing in the Federal Constitution . . .

requires a State 'to abolish the informer's privilege from its law of evidence, and to . . . disclos[e] . . . the informer's identity in every such preliminary hearing where it appears that the officers made the arrest or search in reliance upon facts supplied by an informer they had reason to trust.' [Cit.] . . . We have, to be sure, recently concluded that the Fourth and Fourteenth Amendments entitle a defendant to a veracity hearing if he makes a substantial preliminary showing that an affiant knowingly and intentionally, or with reckless disregard for the truth, included in a warrant affidavit a false statement necessary to the finding of probable cause. *Franks v. Delaware*, [supra]. . . . [But] . . . The decision in *Franks* neither required nor contemplated routine disclosure of informants' identities. . . ."

Thus we conclude, on good authority, that *Franks* does not hold a defendant may obtain disclosure of a confidential informant's identity or compel his appearance at a hearing challenging the probable cause of a search warrant.

3. The defendant's right to disclosure of a confidential informant's identity or whereabouts, or to compel his testimony or that of one who would reveal or expose the confidential informant, is an independent question which must be met on its own ground. The State contends its informer's privilege is absolute, that its invocation can bar the defendant even from producing his own witness if it will tend to reveal the confidential informant. We note here that the State has not conceded this John Doe is the confidential informant, while defendant obviously contends he is.

It is fundamental that the privilege here is not simply one against disclosing identity of a confidential informant; but the public and the informant have a clear interest which can, and in the particular case should, be protected even when the informant's identity has been disclosed or discovered. In *Roviaro v. United States*, 353 U. S. 53, 59-60 (77 SC 623, 1 LE2d 639) the court said: "What is usually referred to as the informer's privilege is in reality the Government's privilege. . . . The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. . . . The scope of the privilege is limited by its underlying purpose."

In a seminal case, the Supreme Court said: "It is . . . [the informant's right and duty] to communicate to the executive officers any information which he has of the commission of an offense against those laws . . . . [I]t is the duty of that government to see that he may exercise this right freely, and *to protect him from violence while so doing, or on account of so doing*. This duty does not arise solely

from the interest of the party concerned, but from *the necessity of the government itself, that its service shall be free from the adverse influence of force and fraud practiced on its agents.*" (Emphasis supplied.) *Re Quarles*, 158 U. S. 532 (15 SC 959, 39 LE 1080).

It is basic to the right that it might extend beyond the defendant's ability to guess or speculate who among his friends and acquaintances might have been the informant. The wonder to us is not that a defendant might know who has informed against him, but that there ever is a defendant who cannot at least speculate who it might have been. If he could summon as a witness whomever he suspects and thus subject any person to threat or intimidation or the certain exposure that comes with enforced testimony under oath, every informant's privilege is destroyed before it begins. It is true that the Supreme Court in *Roviaro* said: "[O]nce the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable," (Id. pp. 60-61); but this was dictum. See *United States v. Tenorio-Angel*, 756 F2d 1505 (11th Cir. 1985). A confidential informant, though his identity might become known *or guessed*, has a real interest in not being subjected to enforced testimony, and so it has been held. See *United States v. Moreno*, 543 F2d 1175 (5th Cir. 1976); *Williams v. United States*, 273 F2d 781 (9th Cir. 1960).

The Ninth Circuit federal appeals court considered this matter in *United States v. Long*, 533 F2d 505 (1976), where a defendant's subpoena to an alleged informant was quashed upon the government's assertion and the trial court's determination *in camera* that the informant was ill, in fear for his life, involved in other investigations that might be revealed if he testified at trial, and was in any event not possessed of information that would assist the defendant. The court held the privilege remained even after the informer's identity was known, because "the informer privilege continued to serve its intended purpose despite the transmittal of the informant's name to appellant's counsel." (P. 508).

In 1976, the Fifth Circuit federal appeals court, in *United States v. Godkins*, 527 F2d 1321, had difficulty imaging how an interest in privilege could continue after the alleged informant's identity became known, and how it could ever survive against the defendant's right to compulsory process; but even before *Godkins*, that court recognized that a defendant's guess or conjecture as to an informant's identity does not necessarily destroy the privilege where "the informant's life would be jeopardized if he were brought to the courthouse." *United States v. Doe*, 525 F2d 878, 879 (5th Cir. 1976).

Since *Godkins*, the Fifth Circuit Court has conceded that, though an informant's identity may not be a secret, "[t]he need for the informant's safety, the avoidance of jeopardizing other operations . . .

may justify nondisclosure of the informant's address." *United States v. Fischel*, 686 F2d 1082, 1092 (1982). Although the court continued to formally maintain (per *Godkins*) that the confidential informant privilege under *Roviaro* evaporates when the informant is known to the defendant, it said: "[W]e do not rule out other valid reasons that the government might advance against turning over the informant's address." This statement seems merely an attempt to revive the privilege the Fifth Circuit had called dead, for the fact is that the federal court has simply been unable, without damaging the entire principle, to resist the continuing vitality of the privilege *to protect the informant*.

In *United States v. Tenorio-Angel*, supra, the same court, relocated, considered a specific challenge to the State's refusal to allow a known informant to testify, in light of the defendant's right to compulsory process. This decision (p. 1509) set out specific factors to be considered by the trial court in balancing the competing interests of the parties: "The extent of the informant's participation in the criminal activity, the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and the government's interest in nondisclosure."

The Eleventh Circuit court conceded in *Tenorio-Angel*, at p. 1510, that the statement in *Roviaro* that " 'once the identity of an informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable [Cit.]' . . . must not be read out of context. The [Supreme] Court explained that [t]he scope of the privilege is limited by its underlying purpose. . . . The *Roviaro* Court did not intend for the existence of the government's privilege to depend upon the fortuity of whether or not the confidential informant introduced himself or herself to the defendant. The former Fifth Circuit recognized that merely because the defendant knows the informant's name, that does not mean there is no genuine interest in maintaining the informant's confidentiality."

We think it should be obvious that the same considerations which impel a confidential informer to be one, do not evaporate when he is found out, but would continue proportionate to his exposure and might subject him to the most insidious fears, far greater than any he faced in giving the original information. The essence of the privilege, as expressed in *Roviaro* and *Re Quarles*, supra, is not mere anonymity but what anonymity as a function serves: impunity. It defies common sense to say the informer privilege dies when the defendant guesses who was the informer, when in fact that is when it really begins.

We conclude without hesitation that, notwithstanding the defendant's apparent discovery of the informant's identity, and despite his physical access to the informant *or perhaps because of it*, the State presumptively has a continuing interest in the informer privi-

lege that might outweigh the defendant's right to compulsory process. *United States v. Long,* supra; *United States v. Tenorio-Angel,* supra. In determining whether to permit or require the witness to testify, the trial court must carefully balance the competing interests of the parties.

4. The accepted procedure according to *Roviaro* and its general consideration of the privilege is a judicial examination *in camera* of the government's need for nondisclosure and non-exposure balanced against the defendant's need for disclosure or production of the witness. *Alderman v. United States,* 394 U. S. 165 (89 SC 961, 22 LE2d 176); see also *Jencks v. United States,* 353 U. S. 657 (77 SC 1007, 1 LE2d 1103); *United States v. Ordonez,* 722 F2d 530, 538-541 (9th Cir. 1983); *Tenorio-Angel,* supra.

Where the State claims a continuing interest in the privilege, including preventing compulsory or voluntary testimony of the informant, then in order to invoke a judicial determination *in camera,* the defendant must make an initial proffer of the materiality and necessity of the informant's testimony. *Alvarez v. United States,* 525 F2d 980 (5th Cir. 1976). The trial court must be apprised of the purpose of any inquiry to which the objection is made. *United States v. Garcia,* 531 F2d 1303 (5th Cir. 1976). Vague references to the purpose of the expected testimony are an insufficient basis to invoke an *in camera* hearing of an informant's proposed testimony for the purpose of determination whether to allow the witness to be called. Obscure allegations of impropriety, complicity or falsification are insufficient (Id. p. 1307), as is conjecture. *United States v. Tenorio-Angel,* supra, p. 1511.

At the very least, a challenge to the veracity of an affiant as to the information given by a confidential informant must comply with the minimal standards established for the entitlement to a hearing on a challenge to an affiant's veracity generally, in *Franks v. Delaware.* The Supreme Court in that case, supra, p. 171, in its recapitulation said: "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient."

The reason for first requiring such specificity of the defendant is

that without it the government in practically every case would affirmatively have to prove the entire role of the informant including his identity and the absence of any impropriety, complicity or falsification on his part, and "[h]aving done that, all would be revealed and the informer privilege . . . would be no more." *Miller v. United States*, 273 F2d 279, 281 (5th Cir. 1960).

Only when the defendant prima facie shows a necessity for the informant's disclosure or exposure to the fair determination of the cause, should the court proceed *in camera* to determine whether the informant's testimony is, in fact, necessary. "There is no fixed rule governing these cases, but the court must weigh the particular circumstances of each case" (*Roviaro*, supra, p. 62), including "the extent of the informant's participation in the criminal activity, the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and the government's interest in nondisclosure." *United States v. Tenorio-Angel*, supra, p. 1509.

If the trial court *in camera* determines the state has a continuing interest in the privilege and the proposed testimony would be cumulative or favorable to the State, it can refuse to compel or allow the witness to testify. If the proposed testimony would go merely to the credibility of the affiant officer, or is merely negative in nature, the privilege may prevent that testimony since the officer himself may be examined and cross-examined. See *Keith v. State*, 238 Ga. 157, 158 (231 SE2d 727). Even the ultimate question of the affiant's credibility is not by itself enough to compel the witness to testify in the face of a legitimate continuing interest in the privilege, for the trial court must first determine whether the defendant's claim as to the helpfulness of the informant's testimony is mere conjecture. *United States v. Tenorio-Angel*, p. 1512.

The assertion of this privilege does not infringe on the substantive rights of the defendant, because if the informant's testimony is relevant and necessary to the defense of an accused, "or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, supra, pp. 60-61; *Ordonez*, supra, p. 540.

5. The defendant in this case asserted in his motion to suppress that he would prove the officer's statements false and disputed the allegation "that any informant who may have been on the premises within the past 7 days spoke to Defendant or that the Defendant had . . . made any statements about hashish. Affiant knew, or should have known, of the informant's complicity with the four State's witnesses who were on the premises at the time the warrant was executed, all of whom admitted involvement with illegal drugs to the police, and that the informants' statements . . . were false." The defendant did not reveal his concept involving the informant's "complicity with the four

State's witnesses who were on the premises" and their involvement with illegal drugs. In our opinion, this assertion is too vague to constitute much more than a fishing expedition. The defendant contended the officer "took some of the things [the witness] witnessed and mixed it with some of his own ideas . . . this man didn't any more intend to be an informant in this thing than anybody else"; but the defendant did not make a proffer as to what those "things" were the witness saw and told the officer and how the officer mixed them with his own ideas, or how the witness became an informant though he did not intend to be one. This statement is altogether too vague to justify allowing the defendant to expose this witness, or another person, as the confidential informant and compel him to testify.

Moreover, the defendant did not in any case comply with the minimal standards established in *Franks v. Delaware,* for an attack upon an affiant's veracity. He did not give "[a]ffidavits or sworn or otherwise reliable statements of [the witness]" and did not give "a statement of supporting reasons" why particular portions of the warrant affidavit were claimed to be false.

The trial court erred in summarily suppressing this evidence merely because the State asserted a continuing interest in the privilege and the witness "could" have thrown the question of probable cause into doubt. The defendant must restate his contentions; if they are sufficient, the trial court must consider the matter *in camera,* balancing the State's interest in the privilege insofar as it actually seeks to prevent compulsory process of the witness, against the defendant's need of the testimony insofar as it would actually disclose a fatal lack of probable cause.

*Judgment reversed. Banke, P. J., and Sognier, J., concur.*

DECIDED FEBRUARY 17, 1987.

*Harry N. Gordon, District Attorney, Gerald W. Brown, Assistant District Attorney,* for appellant.
*Robert N. Elkins,* for appellee.