A99A0145. THE STATE v. GLENN.
(512 SE2d 660)

ELDRIDGE, Judge.

A Mitchell County trial court granted Antonio Glenn's motion to compel the State to reveal the identity of its confidential informant ("CI"). The trial court did so solely on the basis that the CI "was paid compensation by the law enforcement agents for the furnishing of information" and, hence, was "an agent of law enforcement." The trial court certified such ruling for immediate review. See, e.g., *Bolt v. State*, 230 Ga. App. 760 (497 SE2d 406) (1998). We granted interlocutory appeal in order to address the issue of whether compensation given to a CI waives the State's ability to claim the informer's privilege and, thus, compels disclosure of the informant's identity. We answer this question in the negative and reverse.

Investigator R. Williams of the Southwest Georgia Drug Task Force received an anonymous call, informing him that a light-blue Mercury Cougar was about to leave 141 East Cochran Street in Camilla, Georgia, with a large quantity of crack cocaine in a yellow bag. Williams did not know the identity of the caller, but he passed

---

the information along to the Commander of the Drug Task Force, J. Autrey. Autrey was familiar with the location, which was a known drug house where the Task Force had recovered drugs, as well as made undercover buys.

Autrey proceeded to 141 East Cochran and began to patrol the area. A light-blue Mercury Cougar with out-of-county tags was spotted in North Camilla. Autrey followed the Cougar. When the Cougar parked by the curb next to a public housing project, Autrey parked his vehicle against the curb several feet in front of it. Autrey and an accompanying agent, Officer Bowie, exited their car and walked toward the Cougar. The Cougar began to back up in the parking spot. The officers waved their arms, called out to the driver, and asked to speak with him. The driver, appellant Antonio Glenn, rolled down his window. The Cougar also contained both a front seat passenger, Daniel Smith, and a back seat passenger, Ulysses Robinson.[1]

Thereafter, events not at issue in this appeal led to the search of the Mercury Cougar. A plastic bag of marijuana and a $20 rock of crack cocaine were recovered from the rear floorboard near Robinson. Underneath the back seat, the officers recovered a fully loaded Glock .45 semiautomatic pistol. Also, "laying next to the electrical pole that was right beside the front passenger door of the vehicle, just a matter of three or four feet from the passenger door of the vehicle," a yellow bag was recovered, which contained approximately twelve "cookies" of crack cocaine weighing in excess of four hundred grams. Antonio Glenn was arrested, as were passengers Smith and Robinson. All were charged with offenses based solely upon the narcotics and the weapon found in and around the Mercury Cougar.

At the Drug Task Force office, Glenn was given rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), signed a waiver of rights form, and gave a statement to the police. Glenn stated that the yellow bag belonged to Daniel Smith; that he had seen Smith in possession of the bag; that earlier he, Glenn, had driven the light-blue Mercury Cougar to 141 East Cochran Street, where Smith had exited the vehicle and met with someone in the back yard of the residence; that he did not know how the yellow bag ended up beside the light pole; and that he, Glenn, did not remove it from the Cougar.

The identity of the anonymous caller was learned at a later date by another agent. The caller was a CI who previously had been used

---

[1] Although not currently at issue, we note that "[a]pproaching a vehicle that has already stopped through no action of the officer is not a stop or seizure, but is a communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment." (Citation and punctuation omitted.) *Buchnowski v. State*, 233 Ga. App. 766, 767 (505 SE2d 263) (1998).

by this other agent. The CI "had called up there to talk to one of my other investigators who was not present and simply went ahead and passed the information on to Investigator Williams without relating his name." When the other agent learned that the anonymous caller was his CI, the informer was paid $100 for the information regarding the light-blue Mercury Cougar which led to the arrest of Glenn, Smith, and Robinson.

Glenn filed a motion to compel the State to reveal the name of the CI. A hearing was held on the motion, and Commander Autrey was asked the name of the CI. Autrey invoked the informer's privilege.[2] The trial court expressed concern that the informer was paid money for the information, thereby rendering him an "agent for the State": "They're basically selling you information is what it amounts to." However, Investigator Autrey's testimony established that the monetary payment is solely to encourage informers to give information; that "upstanding citizens" are generally not involved in the drug trade so as to provide information; that very few CIs would inform if they were not compensated; and that investigators "glean our information from the people that are either involved [in criminal activity] or at least close enough to know what is going on and very few of these people will actually do it out of the goodness of their heart."

Notwithstanding, the trial court determined that the informer's privilege was not meant to protect the identity of those who sell information, but was meant to protect "upright citizens": "[T]hat distinction is why you have a policy of the State of Georgia to preserve the confidentiality of confidential informants being citizens, upright citizens in the community who don't want to get involved as opposed to people who are willing to sell, to market the information they have for a price." The trial court specifically found that the money paid to the CI rendered him an employee of law enforcement and that the informer's privilege "does not contemplate preserving the anonymity of people who work for law enforcement on some type of compensation basis." Accordingly, the trial court granted the motion and ordered the State to reveal the identity of the CI. *Held*:

1. The informer's privilege is grounded in OCGA § 24-9-27 (d), which states that "[n]o official persons shall be called on to disclose any state matters of which the policy of the state and the interest of the community require concealment." See *Thornton v. State*, 238 Ga.

---

[2] Autrey stated, "I respectfully decline to answer on the grounds that this caller/source has requested that his name remain anonymous based upon the fact that he fears bodily harm through revenge, ostracism in the community and also the fact that, if we reveal this source's name, it's going to scare any other potential caller that may call in and give information because they will be afraid that their name will be used and this will severely, severely limit our abilities to enforce the drug laws in the county."

160, 163 (231 SE2d 729) (1977). "The public policy underlying this privilege is to protect and encourage the flow of information to law enforcement officials." Id. And "[t]he purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." (Citation and punctuation omitted.) *State v. Mason*, 181 Ga. App. 806, 809 (3) (353 SE2d 915) (1987). This policy recognizes the need for informants in the enforcement of the criminal laws and the further consideration that revelation of the identity of an informer destroys his usefulness for any other cases. *Stanford v. State*, 134 Ga. App. 61 (213 SE2d 519) (1975). Accordingly, "[p]ublic policy in Georgia favors nondisclosure of the identity of an informant in the interest of the free flow of information about criminal activity." (Citations and punctuation omitted.) *Roden v. State*, 181 Ga. App. 287, 290 (351 SE2d 713) (1986). To that end, "[w]hat is usually referred to as the informer's privilege is in reality the Government's privilege." *Roviaro v. United States*, 353 U. S. 53, 59-60 (77 SC 623, 1 LE2d 639) (1957). The privilege to withhold the identity of a confidential informant is held by the State and cannot be waived by the informant. Id.; *State v. Mason*, supra.

Thus, whether an informant provides information for altruistic reasons or for lucre is irrelevant for purposes of the State's ability to invoke the informer's privilege. Clearly, it is not the paid status of the informer that counts, but the State's determination that the above public policy rationale is best served by non-disclosure.[3] Such is the State's decision. And such serves to explain why, in the over forty years since disclosure of an informant has been required under certain circumstances, the fact that almost all informants are paid, either with money or mercy, has *never* been a relevant factor either for purposes of invoking the informer's privilege or for purposes of determining whether disclosure is required thereunder. See *Roviaro v. United States*, supra at 56, n. 3 (informer was a "special employee" of federal agents).[4]

Further, without hesitation, we reject the trial court's notion

---

[3] An informer's status as a paid "agent of the State" may be relevant insofar as it makes applicable the defense of entrapment or an inquiry into a possible *Miranda* violation. See, e.g., *Gilbert v. State*, 212 Ga. App. 308 (441 SE2d 785) (1994); *Chalker v. State*, 184 Ga. App. 596 (362 SE2d 152) (1987); *State v. Rogers*, 173 Ga. App. 653 (327 SE2d 782) (1985); *Henderson v. State*, 162 Ga. App. 320 (292 SE2d 77) (1982); *Leonardi v. State*, 154 Ga. App. 402 (268 SE2d 380) (1980).

[4] See also, e.g., *Brown v. State*, 223 Ga. App. 364 (477 SE2d 623) (1996) (Columbus Police Department used paid informer); *Beck v. State*, 216 Ga. App. 532 (455 SE2d 110) (1995) (Dalton Police Department used paid informer); *Pierce v. State*, 180 Ga. App. 847 (350 SE2d 781) (1986) (Georgia Bureau of Investigation used paid informer); see also *Campbell v. State*, 207 Ga. App. 366, 367 (428 SE2d 111) (1993) (use of paid informer to provide probable cause does not lead to identification of such, absent balancing competing interests of parties).

that the informer's privilege was meant to protect only "upright citizens." Such notion displays a misunderstanding of how criminal law enforcement works. Needless to say, if law enforcement were forced to rely for criminal information only upon those whom society-at-large might deem "upright," not only would the information pipeline dry up, but every informant would be subject to the argument that, by virtue of his knowledge of criminal information, he was not sufficiently "upright" to warrant the privilege.

2. However, the informer's privilege is not absolute. "[F]undamental fairness require[s] that the public interest in protecting the flow of information to law enforcement officials be balanced against the right of the accused to a full and fair opportunity to defend himself." (Citations omitted.) *Thornton v. State*, supra at 164.

The established procedure is a two-step process which requires that, "[(1)] in order to invoke a judicial determination in camera, the *defendant* must make an initial proffer of the *materiality and necessity* of the informant's testimony. . . . Vague references to the purpose of the expected testimony are an insufficient basis to invoke an in camera hearing of an informant's proposed testimony for the purpose of determination whether to allow the witness to be called. Obscure allegations of impropriety, complicity or falsification are insufficient, as is conjecture[;] . . . [and (2)] *Only* when the defendant prima facie shows a necessity for the informant's disclosure or exposure to the fair determination of·the cause, should the court proceed in camera to determine whether the informant's testimony is, in fact, necessary. There is no fixed rule governing these cases, but the court must weigh the particular circumstances of each case, including the extent of the informant's participation in the criminal activity, the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and the government's interest in nondisclosure." (Citations and punctuation omitted; emphasis supplied and omitted.) *State v. Mason*, supra at 812-813; see also *Leonard v. State*, 228 Ga. App. 792, 794 (2) (492 SE2d 747) (1997) ("movant must establish the relevance, materiality, and necessity of the identity of the informant as a predicate for disclosure.").

Here, during the hearing on the motion to compel disclosure of the CI, counsel for Glenn stated that the CI should be disclosed because his alleged earlier presence at 141 East Cochran made him a "participant." "He [the CI] at some point had to have been there [141 East Cochran] to know that this car was leaving that house with a large quantity of cocaine in it." However, Glenn has been indicted for possession of narcotics and a weapon only with regard to the drugs and pistol found in and around the Mercury Cougar at the time it was parked in front of the public housing project. Thus, the CI's

alleged earlier presence at 141 East Cochran is irrelevant to the indicted offenses. It is undisputed that the CI was not in the Mercury Cougar, was not present during the search and arrest, and was neither a "participant" nor a witness with regard to the specific offenses with which Glenn has been charged. Thus, as a matter of law, Glenn failed to make a step-one prima facie showing of materiality and necessity so as to justify a step-two in camera judicial determination that the testimony of the CI was required at trial. "OCGA §§ 24-9-21 (4) and 24-9-27 (d) provide for privilege against disclosure of the identity of a confidential informant who was not an eyewitness to the offense that forms the basis for the prosecution, although he or she may have seen the defendant in possession of the contraband at an earlier time, but did not participate in the offense. The informant, for evidentiary purposes, is considered a mere 'tipster.' " *Leonard v. State*, supra at 794 (2).

*Judgment reversed. Case remanded for further proceedings not inconsistent with the instant opinion. Pope, P. J., and Smith, J., concur.*

DECIDED FEBRUARY 17, 1999 — ▮▮▮▮▮▮▮▮▮

*J. Brown Moseley, District Attorney, Victoria Spear-Darrisaw, Assistant District Attorney*, for appellant.
*Ronnie J. Lane*, for appellee.